IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**WELLS FARGO BANK, N.A. NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS
TRUSTEE FOR THE RMAC REMIC TRUST
SERIES 2010-3**

      **Plaintiff,**                                          **Case # 10-58746-CA-13**

      **Vs**

**CARMEN TAUFER**

      **Defendant**

_____

**DEFENDANT CARMEN TAUFER'S OBJECTION TO FORECLOSURE SALE,
MOTION FOR SANCTIONS AGAINST PLAINTIFF AND ITS ATTORNEYS, MOTION
TO VACATE THE SUMMARY JUDGMENT AND TO DISMISS THIS FORECLOSURE
ACTION WITH PREJUDICE FOR NEGLIGENCE AND MISREPRESENTATION BY
THE PLAINTIFF AND ITS ATTORNEYS**

      COMES NOW, CARMEN TAUFER, (hereinafter referred to as "Defendant"), by and
through her designated attorney, and hereby file their Objection to Sale pursuant to Florida
Statute §45.031, (which authorizes objections to judicial foreclosure sales if timely made.
Defendant has the right to file an objection within 10 days after the Certificate of Sale has been
issued and this Objection is being filed within that time allowed), Motion to Vacate Sale and to
Vacate the Summary Judgment of Foreclosure pursuant to Rule 1.540(b)(4) of the Florida Rules
of Civil Procedure and in support thereof states as follows:

**THE MERE FILING OF A CASE DOES NOT MEAN THERE IS ANY MERIT TO A
PLAINTIFF'S CASE. A PARTY AND/OR ITS ATTORNEYS MAY BE SUBJECT TO
SANCTIONS FOR RAISING UNSUPPORTED CLAIMS OR DEFENSES. FLORIDA
STATUTE §57.105 (2012).**

**Exhibit "A"**

Case # 10-58746-CA-13

## I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

1. This case involves a JPMORGAN CHASE BANK, N.A. loan;

2. Defendant discovered Irregularities in the foreclosure process that makes the sale void under state law. Defendant also discovered non-compliance with the terms of the mortgage and An inadequate sale price that shocks the conscience was paid by her property;

3. **Reasons a Foreclosure Sale May Be Set Aside**

Generally, to set aside a foreclosure sale, the homeowner must show:

- An inadequate sale price that shocks the conscience

- Irregularities in the Foreclosure Process that makes the sale void under state law;

- Non-Compliance with the terms of the mortgage

The Defendant discovered many reasons to set aside the sale of her property and this is why she is filing this Objection to the sale of her property, Motion to Vacate Sale and Motion to Vacate Summary Judgment

4. The Plaintiff WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3, in this foreclosure action violated just about every Rule of Civil Procedure, Rule of Evidence, Florida Statutes and some Federal Laws, including the Dodd-Frank Act that defendant will explain later;

5. The Defendant CARMEN TAUFER is the current owner of the real property and improvement located in Miami-Dade County, Florida, located at 888 South Douglas Road, Unit 1502, Coral Gables, FL 33134, since October 3, 2007;

6. A Foreclosure Sale was held on 09/18/2014, for the above described property;

7. A Certificate of Sale was issued on 09/23/2014;

8. The Defendant has not received copy of said Certificate of Sale as required by F.S. §45.031(4). CERTIFICATION OF SALE; *After a sale of the property the clerk shall promptly file a certificate of sale <u>and serve a copy of it on each party</u>* . . . .Defendant was never served with a copy of the Certificate of Sale.

Case # 10-58746-CA-13

## "DEFENDANT'S PROPERTY SOLD FOR]
## AN INADEQUATE SALE PRICE THAT SHOCKS THE CONSCIENCE"

9.  As per Auction Results, the Plaintiff purchased the property for $20,100.00.  This is only .003724%, of the total amount of the Summary Judgment of $539,723.23

10. The purchase price paid by the Plaintiff is grossly inadequate!

11. Defendant Carmen Taufer objects to the sale in that the price paid by the Plaintiff is a shock to the conscience.

12. In the past, there was some dispute as to whether or not proof of these facts alone would justify setting aside the sale. However, in Nicholas Arsali v. Chase Home Finance LLC, 38 Fla. L. Weekly S562a (Fla. July 11, 2013), the Florida Supreme Court was presented with this very issue and has clarified that, in this situation, the trial court may set aside the foreclosure sale and dismiss the foreclosure action.

13. In Arsali, the lender had obtained summary judgment of foreclosure and a foreclosure sale was scheduled. However, the lender and the borrowers reached an agreement to reinstate the loan. The borrowers timely complied with the requirements to reinstate the loan, but the lender's counsel neglected to have the foreclosure sale canceled. Accordingly, the sale proceeded as scheduled and a third-party purchaser submitted the successful bid. Before the certificate of title was issued, the borrowers timely objected to the sale pursuant to Fla. Stat. §45.031 by filing a motion to vacate sale and certificate of sale. The third-party purchaser was granted leave to intervene and a hearing was held on the borrowers' motion to vacate. After considering evidence establishing the agreement to reinstate and the borrowers' compliance with that agreement, the trial court granted the borrowers' motion, vacated the sale and certificate of sale, ordered that all funds paid by the third-party purchaser be returned, vacated the foreclosure judgment, and dismissed the case. The third-party purchaser then filed a motion for rehearing, which the trial court denied.

14. The third-party purchaser appealed the trial court's rulings, but the Fourth District Court of Appeals affirmed, Arsali v. Chase Home Finance, LLC, 79 So.3d 845 (Fla. 4th DCA 2012), receding from its prior opinion in Blue Star Investments, Inc. v. Johnson, 801 So.2d 218 (Fla. 4th DCA 2001). The Fourth District explained that inadequacy of price need not be established in every attempt to set aside a foreclosure sale and that two

Case # 10-58746-CA-13

different tests are to be applied depending on the basis for the request: (1) the test set forth in Moran-Allen Co. v. Brown, 123 So. 561 (Fla. 1929), when grounds other than inadequacy of bid price are presented; and (2) the test set forth in Arlt v. Buchanan, 190 So.2d 575 (Fla. 1966), when inadequacy of bid price is a basis for the request.

15. The Florida Supreme Court granted review as a pure legal issue of great public importance, rephrasing the Fourth District's certified question as follows:

DOES INADEQUATE BID PRICE NEED TO BE ALLEGED AND PROVEN IN ORDER TO SET ASIDE A JUDICIAL FORECLOSURE SALE?

16. The Florida Supreme Court began its analysis by clarifying apparent prior misunderstandings and confirming that the decisions in Brown and Arsali are not in conflict. In doing so, the Supreme Court rejected the analyses of the Fourth District (Arsali), the Second District (Ingorvaia v. Horton, 816 So.2d 1256 (Fla. 2d DCA 2002)), and the Fifth District (Josecite v. Wachovia Mortgage Corp., 97 So.3d 265 (Fla. 5th DCA 2012)), each of which had concluded that Brown and Arsali were in conflict.

17. The Court then proceeded to discuss that there are no indispensable equitable factors required to set aside a judicial foreclosure sale. **The Court noted that an objection to sale must be timely filed as required by Fla. Stat. §45.031 and then discussed the equitable nature of foreclosure proceedings, reemphasizing that:** the trial courts' use of their equity powers in resolving disputes pertaining to judicial foreclosure sale set aside actions is essential.

18. The Court advised that a party seeking to set aside a foreclosure sale must:

allege one or more adequate equitable factors and make a proper showing to the trial court that they exist in order to successfully obtain an order that sets aside a judicial foreclosure sale.

19. The Florida Supreme Court, holding that proof of an inadequate bid price is not required, concluded that the Fourth District properly affirmed the trial court's decision to vacate the foreclosure sale because: **(1) timely objection to the sale had been made; (2) equitable grounds for vacating the foreclosure sale had been established;** and **(3) all funds paid by the third-party purchaser would be refunded.**

Case # 10-58746-CA-13

20. The Supreme Court's ruling in Arsali should provide clarity to those who seek to vacate foreclosure sales and some comfort to those who have inadvertently neglected to cancel foreclosure sales when agreements have been made to reinstate loans or permit short sales.

21. In this foreclosure action, the property actually sold for $20,100.00 at the foreclosure sale which is grossly inadequate for the following reaons:

Firstly, pursuant to § 45.031(8), Florida Statutes (2013), "The amount of the bid for the property at the sale shall be conclusively presumed to be sufficient consideration for the sale."

Secondly, pursuant to the same subsection of the same statute, the sale price may be\ considered as a factor when the Court is making a determination of the value of the property upon a Motion for Deficiency Judgment.

22. Considering the legal implications of a foreclosure sale price, the process is very important. As presently carried out, the foreclosure auction process is unfair and noncompetitive. While § 45.031(10), Florida Statutes (2013) permits a clerk to accept an electronic proxy bid from a plaintiff, there is nothing in the statute that requires or permits this information to be disclosed to the public before the foreclosure auction. The practice of disclosing said bid makes any such auction conducted in that manner inherently unreasonable, unfair, and ultimately noncompetitive.

23. The Fifth District in Josecite v. Wacovia Mortgage Corp. (Fla. 5th DCA August 31, 2012) stated that foreclosures are equitable proceedings under Florida law and settlements between litigants are favored.  The court found that inadequacy of the sale price was just one of the factors that needs to be considered in vacating and setting aside a judicial sale.  The court must consider any and all of the grounds: surprise, accident, mistake, and irregularity.

24. Then there is the recent case Citimortgage v. Synuria (Fla. 4th DCA May 2, 2012).

http://scholar.google.com/scholar_case?q=Arsali&hl=en&as_sdt=4,10&as_ylo=2011&case=11656804671706497197&scilh=0

In this case the bank filed a foreclosure action against the homeowners.  The court entered a final judgment for $41,580.97.  The sale took place and the house was sold for $800.

Case # 10-58746-CA-13

The bank filed a motion to vacate foreclosure sale, arguing that the sale price was grossly inadequate and the inadequacy resulted from mistake or other irregularity. The trial court denied the motion. The bank filed an appeal.

The court of appeal quoted Long Beach Mortg. Corp. v. Bebble, 985 S0. 2d 611 (Fla. 4th DCA 2008).
http://scholar.google.com/scholar_case?case=10283884755961966340&q=985+So.+2d+611&hl=en&as_sdt=4,10&as_ylo=2008

25. In Long Beach the house sold for $1,000 – .02% of the judgment amount and the court concluded that "the purpose of the law in this area is to promote the viability of the foreclosure sale process, to encourage good faith offers for foreclosed properties, not to protect outrageous windfalls to buyers who make de minimum bids".

26. In Synuria the house sold for 1.9% of the judgment. The court found the sale price grossly inadequate, which resulted from a mistake, and reversed the lower court's decision.

27. In this case it's the bank that purchased the house. But if the bank grabs a home for $100, it should apply too. The sale should be vacated.

28. This Court must vacate Vacate the Final Judgment of Foreclosure entered on 03/19/2014, and therefore vacate the sale of Defendant's property of 09/18/2014, Vacate the Certificate of Sale issued on 09/23/2014, based on the grounds that such judgment was void and it is no longer equitable, that the judgment or decree should have prospective application. Florida Rules

## II. IRREGULARITIES DISCOVERED BY DEFENDANT SHOWS NEGLIGENCE BY THE PLAINTIFF AND ITS PREVIOUS AND CURRENT ATTORNEYS HAVING VIOLATED EVERY RULE OF CIVIL PROCEDURE, RULE OF EVIDENCE, FLORIDA STATUTES AND FEDERAL LAWS

29. The named Plaintiff in this case is WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3 (Hereinafter called Plaintiff);

30. The Law firm that commenced this foreclosure action and filed the Lis Pendens, the Complaint, etc is Ben-Ezra & Katz.

Case # 10-58746-CA-13

31. This law firm is closed a result of an investigation by the Florida Attorney General and other State and Federal Agencies on allegations that they had commenced foreclosure action without having the correct paperwork, filed fraudulent Assignments of Mortgage, filed Affidavits without having knowledge of what they were signingl

32. The Defendant was not properly s served within the 120 days as required by Florida Rules of Civil Procedure. Defendant filed a Motion to Quash any attempted service of process which was denied by the Court at a hearing in which Defendant was not notified and said hearing was scheduled by the Plaintiff's attorney and not by the Defendant. Said action denied Defendant's right to a due process.

33. The Plaintiff's Complaint was improperly verified and did not comply with the mandate of the Florida Supreme Court regarding Verification of Complaint;

34. The named Plaintiff is a Trust that has not been registered as required by Florida Statute.

35. The named Plaintiff is a Florida corporation and did not post a bond as required by Florida Law on foreign corporations.

36. The named Defendant in this case is CARMEN TAUFER (hereinafter "Defendant");

37. Plaintiff initiated this action when it filed its Complaint on 11/04/2010;

38. Plaintiff states in Paragraph 2, of Count I, of its complaint that *on October 3, 2007, Defendant CARMEN TAUFER, executed and delivered a promissory Note to JPMORGAN CHASE BANK, N.A.*

39. Plaintiff states in Paragraph 3, of Count I, of its complaint that *on the same day, Defendant CARMEN TAUFER, executed and delivered a Mortgage securing payment of said promissory note to JPMORGAN CHASE BANK, N.A., which mortgage was recorded on October 10, 2007, in Official Records Book 25980, Page 3985 of the Public Records of Miami-Dade County, Florida.* ***That said Mortgage is presently held by Plaintiff by virtue of Assignment of Mortgage recorded in Official Records, Book 27398, Page 1850****, which mortgaged the property described therein, then owned by and in possession of said mortgagor, copies of said note, mortgage and assignment of mortgage being attached hereto.*

40. The Assignor in this AMO is Chase Home Finance, LLC, who is not and has never been mentioned in the note and mortgage;

Case # 10-58746-CA-13

41. However, the Defendant did a research and discovered that there is another Assignment of Mortgage recorded earlier, on 09/15/2008, CFN: 2008R0751021, OR BK 26567, Pages 914-915, from JPMorgan Chase Bank, N.A. to Chase Home Finance, LLC.

42. Both of these Assignment of Mortgage are fraudulent as they were fabricated signed, notarized by well known robo-signers;

43. Plaintiff states in paragraph 4, *that Plaintiff holds the note and mortgage and/or received delivery of the note from the note holder for the purpose of giving Plaintiff the right to enforce the note and the mortgage*

44. Plaintiff fails to disclose or explain how this "delivery of the note from the note holder for the purpose of giving Plaintiff the right to enforce the note and mortgage was done.

45. As of date this Motion to Dismiss was prepared, Plaintiff has not filed with this Court the original note and mortgage in question nor has provided any evidence of the Note being indorsed and the mortgage being assigned to Plaintiff

46. On or around 03/19/20-14, the Plaintiff filed what they called Original Note and Mortgage but this would have been impossible as the Original Note was replaced with a Certificate from the Trust that bought the loan.

47. Plaintiff contends that it is the holder of a note and mortgage executed by the Defendant.

48. Despite the Plaintiff's contention that it is the holder of the Note and Mortgage, the copy of the note and mortgage filed by Plaintiff provides otherwise.

49. Specifically, the note, under the Section 1 entitled "Borrower's Promise to Pay", reads that "the Lender is "JPMORGAN CHASE BANK, N.A." Moreover, the mortgage, under Section entitled "Definitions" subsection (C), reads that the "Lender is "JPMORGAN CHASE BANK, N.A."

50. The Plaintiff did not submit to the court a valid Allonge to the note or any assignment or indorsement of the note to the Plaintiff or to any other institution for that matter.

51. Therefore, according to the very exhibits offered by the Plaintiff, at the time the Note and Mortgage were executed the true owner and holder of the note and mortgage was JPMORGAN CHASE BANK, N.A. (hereinafter "JPMORGAN CHASE BANK, N.A.") and not the Plaintiff.

52. The note is devoid of any endorsement, either in blank or made specifically to the Plaintiff, which would effectuate the transfer of ownership interest in the note to the

Case # 10-58746-CA-13

Plaintiff.  Therefore, without such an endorsement, the true owner and holder of the note and mortgage in question remains JPMORGAN CHASE BANK. N.A. and _not_ the Plaintiff.

53. Finally, while the Plaintiff's name is invoked in the caption line of its complaint, nowhere else is the Plaintiff's identity even pled.  Furthermore, a search of the Florida Division of Corporations shows that the Plaintiff was _never_ issued any license, either active or inactive, with which it can utilize to conduct business in this State.

## "DEFENDANT'S MOTION TO VACATE SUMMARY JUDGMENT, CERTIFICATE OF SALE, SALE OF PROPERTY AND DISMISS THIS CASE WITH PREJUDICE"

54. Defendant will present to this Court all the evidence proving that the Plaintiff previous attorney filed/recorded fraudulent documentation, such as fraudulent Assignment of Mortgage, by misrepresenting the facts and that those documents were used by their new attorneys to obtain a Summary Judgment, an Order of Judicial Sale and a Sale but that said Summary Judgment is NULL and VOID and all actions taken thereafter;

THIS COURT HAS JURISDICTION TO QUASH ANY POSSIBLE SALE, TO DISMISS THIS FORECLOSURE ACTION AND TO VACATE THE JUDGMENT WITH PREJUDICE EVEN AFTER THE JUDICIAL SALE AS THIS WOULD BE A "VOID JUDGMENT"

### A.   STANDARD ON MOTION TO DISMISS WITH PREJUDICE OR TO SET ASIDE A VOID JUDGMENT

**Florida Rule of Civil Procedure section 1.540(b)** gives relief from judgment, decrees or orders if there is merit to the case, which there is in this case.  In paragraph (b) on motion and upon such terms that are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons:

i.      Mistake, inadvertence, surprise, or excusable neglect;

ii.     Newly discovered evidence, which by due diligence could not have been discovered in time to move for a new trial or rehearing; and

iii.    Misrepresentation, or other misconduct of an adverse party. The rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.

Case # 10-58746-CA-13

**B.    FLORIDA STATUTE 702.07 PROVIDES IN PERTINENT PART:**
**Florida Statute 702.07.** Powers of courts and Judges to set aside foreclosure decrees at any time before sale. - The Circuit Courts of this state, and the Judges thereof, shall have Jurisdiction, power, and authority to rescind, vacate, and set aside a decree of foreclosure . . ., and to dismiss the foreclosure proceeding . .

**C.    FLORIDA STATUTE 701.02 ASSIGNMENT OF MORTGAGE**
Florida Statute 701.02 specifically states that "(1) An assignment of a mortgage upon real property or any interest therein, is not good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the assignment is contained in a document that, in its title, indicates an assignment of mortgage and is recorded according to law."

*Assignment Laws*
Banks commonly sell loans to one another through assignments or transfers. In Florida, the Florida Statutes Section 702.2 states that lenders who assign loans or transfer loan servicing rights to other banks must comply with the assignment recording requirements.

A bank must record its valid assignment of mortgage to become the "mortgagee of record BEFORE they commence a foreclosure action."

**THERE WAS NO VALID ASSIGNMENT OF MORTGAGE RECORDED IN PUBLIC RECORDS WHEN THIS FORECLOSURE ACTION WAS COMMENCED ON 11/04/2010.**

There is an Assignment of Mortgage filed by the Plaintiff executed, notarized and recorded by well known robo-signers on 08/25/2010.  There is another Assignment of Mortgage recorded on  09/15/2008, in Record Book 26567, Page 914, of the Public Records of Miami-Dade County, Florida.  Both of these Assignments were prepared, signed and notarized the same day, 01/24/2008, at which time the original lender did not know who the buyer would be, prepared, signed and notarized by the same robo-signers that prepared the other one.

There is a Second Assignment of Mortgage recorded in public records of Mimai dade county, Fl CFN: 2010R0574828, OR BK 27398, Pages 1850-1851

Therefore, the only Assignment of Mortgage attached to the Complaint is fraudulent as it was prepared, signed and notarized by employees of the Loan Servicer

Case # 10-58746-CA-13

**D. MORTGAGE SERVICING FRAUD** occurs when mortgage servicers make False statements and/or create false documents or evidence to take homeowner's property and equity.

This is accomplished by using any of the following tactics:

- **Falsely claiming to be the owner/holder of the mortgage;**
- **Falsely claiming standing by use of names such as Trustee, Assignee, Nominee, Beneficiary, etc.;**
- **Fraudulently invoking the jurisdiction of the court;**
- **Preying on the ignorance of the court and homeowner;**
- Falsely claiming Pooling & Servicing Agreements, industry standards, rules, guidelines or other industry-authored writings supersede the law;
- **Failing to follow PSA guidelines;**
- **Robo-Signing legal documents without the legal authority to do so.**
- Entering on-time payments as late, to exact illegal and unauthorized fees;
- Manipulating account records;
- Backdating legal documents;
- **Filing forged documents in courts and public records;**
- **Charging force-placed insurance when the homeowner already has full coverage;**
- Falsely reporting a default to the credit bureaus when it is the pretender lender who is manufacturing the default;
- Paying property taxes late, then charging the late penalties to the borrower;
- Paying taxes and insurance on the wrong property;
- Refusing payments to guarantee default;
- Adding thousands of dollars in unearned legal fees to create a default;
- Ignoring customer complaints and "qualified written requests";
- Arrogantly violating numerous laws and regulations;
- Coercing the homeowner into signing a forbearance agreement to strip away their legal rights;
- Falsifying records and documents;
- **Committing fraud upon the courts by stating they are the Holder and Owner of the Note - when in fact - they do not own or hold the "original" Note;**
- **Not adhering to the terms of the loan documents;**
- Adding misc. fees to purposely create a deficiency with the borrower's next payment;
- Committing perjury through misrepresentations;
- Refusing to cooperate with attempts to refinance and stop the illegal foreclosure;
- Threats & intimidation;
- **Wire Fraud / Mail Fraud;**
- Conspiracy;
- Fraud in the inducement;
- **Unjust Enrichment;**
- Embezzlement;
- Racketeering - RICO;
- Abuse of Process;
- **Tax Fraud (REMIC);**
- **Notary Fraud;**
- Evidence Tampering;
- Theft of Government Services;
- **Perjury;**
- Felonious Influence of Public Officials;
- Insurance Fraud; Securities Fraud; nd many others.

**"MORTGAGE SERVICING FRAUD HAS DEFENITELY OCCURRED IN THIS FORECLOSURE ACTION"!**
**THIS JUDGMENT IS VOID AB INITIO!**

Case # 10-58746-CA-13

**MOTION FOR SANCTIONS AGAINST PLAINTIFF AND ITS PREVIOUS ATTORNEYS FOR FILING FRAUDULENT DOCUMENTATION AND AGAINST THEIR CURRENT ATTORNEY FOR NOT NOTIFYING THE COURT ABOUT THE FRAUDULENT DOCUMENTATION IN DEFENDANT'S FILE**

**"MEMORANDUM OF LAW TO SUPPORT DEFENDANT'S MOTION FOR SANCTIONS"**

**FIRST ARGUMENT**

**"THE FINAL JUDGMENT OF FORECLOSURE WAS OBTAINED BY PRESENTING TO THE COURT FRAUDULENT DOCUMENTATION AND IT WAS ISSUED IN THE NAME OF AN ENTITY THAT WAS NEVER PART OF THE FORECLOSURE"**

**THE SUMMARY JUDGMENT OBTAINED BY THE PLAINTIFF IS VOID AS IT WAS OBTAINED BY MISREPRESENTION, BY LYING TO THE COURT, BY FILING AFFIDAVITS OF INDEBTEDNESS WITHOUT HAVING PERSONAL KNOWLEDGE, BY FILING FRAUDULENT ASSIGNMENTS OF MORTGAGE AND OTHER NEGLIGENCE AND MISCONDUCT BY THE PLAINTIFF AND/OR ITS ATTORNEYS**

55. That Section 1.540(b) of the Florida Rules of Civil Procedure provides that the Court, upon Motion, may relieve a party from a Final Judgment, Decree, Order or Proceeding in the event of (1) mistake, inadvertence, surprise or excusable neglect (2) newly discovered evidence; and/or (3) fraud, misrepresentation, or other misconduct of an adverse party.

56. The Plaintiff in this matter engaged in fraud and other misconduct, in which a motion to vacate final judgment of foreclosure must be brought and this exactly what the Defendant is doing with this Motion;

## I.   LEGAL STANDARD FOR RECONSIDERATION

57. A Court has the inherent authority and discretion to reconsider its own order outside of this rule. Bettez v. City of Miami, 510 So.2d 1242, 1242-43 (Fla.3d DCA 1987) (trial court has discretion to reconsider its own orders)

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

58. The requirements for filing, and the standard for considering a motion for summary judgment, are set forth in Rule 1.510(c), Fla. R. Civ. P., and says:

Case # 10-58746-CA-13

The motion shall state with particularity the grounds upon which it is based and the substantial matters of law to be argued and shall specifically identify any affidavits, answers to interrogatories, admissions, depositions, and other materials as would be admissible in evidence ("summary judgment evidence") on which the movant relies. The movant shall serve the motion at least 20 days before the time fixed for the hearing, and shall also serve at that time copies of any summary judgment evidence on which the movant relies that has not already been filed with the court. The adverse party shall identify, by notice mailed to the movant's attorney at least 5 days prior to the day of the hearing, or delivered no later than 5:00 p.m. 2 business days prior to the day of the hearing, any summary judgment evidence on which the adverse party relies.

To the extent such summary judgment evidence has not already been filed with the court, the adverse party shall serve copies on the movant by mailing them at least 5 days prior to the day of the hearing, or by delivering them to the movant's attorney no later than 5:00 p.m. 2 business days prior to the day of hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

59. Summary judgment is only valid when there are no genuine issues of material fact, and, when the moving party, by law, is entitled to judgment. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000)

60. There are genuine issues of material fact in this foreclosure action that require the Court to reconsider the case with all the evidence presented by the Defendant;

**A. The moving party must show, beyond the slightest doubt, that there is an absence of issues of material fact.**

61. Ordinarily, the movant has the burden to prove, without question, that there are no genuine issues of material fact. See Krol v. City of Orlando, 778 So. 2d 490, 92 (Fla. 5th DCA 2001), (citing City of Cocoa v. Leffler, 762 So. 2d 1052, 1055(Fla. 5th DCA 2000), (citing Holl v. Talcott, 191 So. 2d 40, 43 (Fla. 1966))).

62. The court, with regard to drawing inferences, must do so in favor of the nonmoving party, as much as possible. See Kitchen v. Ebonite 6 Recreation Ctrs., Inc., 856 So. 2d 1083, 1085 (Fla. 5th DCA 2003)

Case # 10-58746-CA-13

63. The slightest doubt will bar an entry of summary judgment. See Mivan (Florida), Inc. v. Metric Constructors, Inc., 857 So. 2d 901, 902 (Fla. 5th DCA 2003)

**B. If the moving party fails to meet its burden, non-moving party has no duty to rebut**

64. The nonexistence of genuine issues of material fact is the movant's burden to prove. Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So. 2d 1138, 1140 (Fla. 2d DCA 2000)(quoting Holl, supra, at 44)

**C. Movant's grounds must be stated with particularity.**

65. Movant's failure to state legal and factual grounds with particularity, in a motion for summary judgment, is fatal to the motion. Lee v. Treasure Island Marina, Inc., 620 So. 2d 1295, 1297 (Fla. 1st DCA 1993); Finn v. Lee County, 479 So. 2d 246 (Fla. 2nd DCA 1985)(summary judgment reversed when theory upon which movant proceeded is not stated in motion for summary judgment). Failure to state factual and legal grounds with particularity, is fatal to a motion for summary judgment.

## III.   PLAINTIFF FAILED TO MEET ITS BURDEN ON THE MOTION FOR SUMMARY JUDGMENT

66. Plaintiff must be the holder of the note and mortgage, and must show that the borrower is in default under the note to be in standing to foreclose on a mortgage. Law Offices of Stern v. Security Nat. Corp., 969 So. 2d 962 (Fla. 2007) (the elements of a mortgage foreclosure action are: first, the claimant be the owner and holder of the note and mortgage; second, that the mortgagee has defaulted on that note and mortgage); Your Construction Center v. Gross, 316 So. 2d 596 (Fla. 4th DCA, 1975)

**A. The Movant must be the owner and holder of the note and mortgage**

67. The Plaintiff's original complaint, stated that Plaintiff is the "holder of the note and mortgage" for the Defendant's home, but the complaint did not contain sufficient facts to establish who the Plaintiff really is and its relationship to the Defendant and to the claim for foreclosure of a promissory note, including the date of the alleged assignment of the mortgage and note, and the identity of the owner of the subject

Case # 10-58746-CA-13

promissory note. The complaint fails to sufficiently identify the Plaintiff and fails to allege facts sufficient to determine the standing of the Plaintiff.

68. Plaintiff entered a sworn AFFIDAVIT IN SUPPORT OF SUMMARY JUDGEMENT as evidence during the suit for foreclosure. Nowhere in the affidavit is there a statement confirming that WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3, is the owner and holder of the note and mortgage of the subject property.

69. Florida Rule of Civil Procedure 1.130(a) provides in pertinent part: "All bonds, notes, bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading."

70. Plaintiff attached documents to its complaint that conflict with the allegations of material facts in the complaint in which the Plaintiff claims that it "holds the Note and Mortgage" but does not state when the assignment, if any, of the note and mortgage occurred.

71. These allegations conflict with the mortgage attached to the complaint that identifies JP MORGAN CHASE BANK, N.A. as the lender with the security interest. These allegations therefore constitute serious misrepresentations and could be construed as a fraud upon the court.

72. The affiant was not the custodian of the records. See Black's Law          Dictionary, 8th ed. 2004, custodian

**Failure to Attach Documents Violates Fla. Stat. §90.901 (1989). Florida Statue §90.901 (1989) states**, in pertinent part, that "authentication or identification of evidence is required as a condition precedent to its admissibility." The failure to authenticate documents referred to in affidavits renders the affiant incompetent to testify as to the matters referred to in the affidavit. See Fla. R. Civ. Pro. 1.510(e) (which reads, in pertinent part, that "affidavits… shall show affirmatively that the affiant is competent to testify to the matters stated therein"); Zoda v. Hedden, 596 So. 2d 1225, 1226 (Fla. 2d DCA 1992) (holding, in part, that failure to attach certified copies of public records rendered affiant, who was not a custodian of said records, incompetent to testify to the matters stated in his affidavit as affiant was unable to authenticate the documents referred to therein.)

Case # 10-58746-CA-13

73. The affiant further states in that same paragraph that "…Affiant has personal knowledge of the matters contained in the books, records and documents…" See Fla. R. Civ. Pro. 1.510(e) (reading, in pertinent part, that "affidavits shall be made on personal knowledge"); Enterprise Leasing Co. v. Demartino, 15 So. 3d 711 (Fla. 2d DCA 2009); West Edge II v. Kunderas, 910 So. 2d 953 (Fla. 2d DCA 2005); In re Forefeiture of 1998 Ford Pickup, Identification No. 1FTZX1767WNA34547, 779 So. 2d 450 (Fla. 2d DCA 2000).

74.     Additionally, a corporate officer's affidavit which merely states conclusions or opinion is not sufficient, even if it is based on personal knowledge.  Nour v All State Supply Co., So. 2d 1204, 1205 (Fla. 1st DCA 1986). The Third District, in Alvarez v. Florida Ins. Guaranty Association, 661 So. 2d 1230 (Fla. 3d DCA 1995), noted that "the purpose of the personal knowledge requirement is to prevent the trial court from relying on hearsay when ruling on a motion for summary judgment and to ensure that there is an admissible evidentiary basis for the case rather than mere supposition or belief."

Id at 232 (quoting Pawlik v. Barnett Bank of Columbia County, 528 So. 2d 965, 966 (Fla. 1st DCA 1988)). This opposition to hearsay evidence has deep roots in Florida common law.

75.     In Capello v. Flea Market U.S.A., Inc., 625 So. 2d 474 (Fla. 3d DCA 1993), the Third District affirmed an order of summary judgment in favor of Flea Market U.S.A as Capello's affidavit in opposition was not based upon personal knowledge and therefore contained inadmissible hearsay evidence.  See also Doss v. Steger & Steger, P.A., 613 So. 2d 136 (Fla. 4th DCA 1993); Mullan v. Bishop of Diocese of Orlando, 540 So. 2d 174 (Fla. 5th DCA 1989); Crosby v. Paxson Electric Company, 534 So. 2d 787 (Fla. 1st DCA 1988); Page v. Stanley, 226 So. 2d 129 (Fla. 4th DCA 1969).  Thus, there is ample precedent for striking affidavits in full which are not based upon the affiant's personal knowledge

76.     Here, the entire Affidavit is hearsay evidence as the affiant has absolutely no personal knowledge of the facts stated therein.

77.     An affidavit in support of a motion for summary judgment may not be based upon factual conclusions or opinions of law.  Jones Constr. Co. of Cent. Fla., Inc. v. Fla. Workers' Comp. JUA, Inc., 793 So. 2d 978, 979 (Fla. 2d DCA 2001).  Furthermore, an

Case # 10-58746-CA-13

affidavit which states a legal conclusion should not be relied upon unless the affidavit also recites the facts which justify the conclusion.  Acquadro v. Bergeron, 851 So. 2d 665, 672 (Fla. 2003); Rever v. Lapidus, 151 So. 2d 61, 62 (Fla. 3d DCA 1963).

78.     Here, the Affidavit contained conclusions of law which were not supported by facts stated therein.  Specifically, the affiant averred that the Plaintiff was entitled to enforce the Note and Mortgage and that the Plaintiff was entitled to a judgment as a matter of law, two legal conclusions, but did not support this conclusion with statements which referenced exactly who the Plaintiff was entitled to enforce the Note and Mortgage against.

79.     In fact, the Plaintiff was never the holder of the note and mortgage on Defendant's home. The fact that it is clear that deception was intended by the production of the assignments, constitutes fraud, and a fraud on this Court.

80. None of the documents provided, substantiate that Plaintiff is a real party in Interest.

81. As a matter of law, Plaintiff's allegations and exhibits should cancel each other out. Fladell v. Palm Beach County Canvassing Board, 772 So.2d 1240 (Fla. 2000); Greenwald v. Triple D Properties, Inc., 424 So. 2d 185, 187 (Fla. 4th DCA 1983); Costa Bella Development Corp. v. Costa Development Corp., 441 So. 2d 1114 (Fla. 3rd DCA 1983).

82. Based on all of the evidence, the law, and Fla. R. Civ. Pro. as referred to herein, it is clear that Plaintiff does not now, nor ever did have standing to bring this action.

83. The Plaintiff and its Attorney in this foreclosure action the Law Office of BENZ-ERA & KATZ, P.A violated just about every Rule of the Florida Rules of Civil Procedures and just about every Statute of the Florida Statutes regarding foreclosures and even Federal Laws and they have a history of doing the same in different Courts throughout the State of Florida.  Fannie Mae cancelled their contract with The Law Office of Benz-Era & Katz,

THE SUMMARY JUDGMENT OBTAINED BY THE PLAINTIFF IS VOID AS IT WAS OBTAINED BY MISREPRESENTION, BY FILING AFFIDAVITS OF INDEBTEDNESS WITHOUT HAVING PERSONAL KNOWLEDGE, BY FILING FRAUDULENT ASSIGNMENTS OF MORTGAGE AND OTHER MISCONDUCT BY THE PLAINTIFF AND/OR ITS ATTORNEYS

Case # 10-58746-CA-13

WHEREFORE, Defendants pray that this Honorable Court would vacate the summary judgment, and grant all relief and remedies due Defendants, or in the alternative, hold a hearing to allow additional evidence to be presented to this Honorable Court.

## SECOND ARGUMENT

### "VOID JUDGMENTS CAN BE ATTACKED AT ANY TIME"
### "THERE IS NOT TIME LIMIT ON ATTACKING A VOID JUDGMENT"

84. Objections to a *void judgment* can be raised at any time. The final judgment entered upon default in this case awarding un-liquidated damages without affording the defaulting party notice and opportunity to be heard is a *void judgment*.

85. Under the specific provisions of rule 1.540(b) of the Florida Rules of Civil Procedure, a motion to set aside a final judgment bottomed upon the reason that the judgment is void is not subject to the one-year limitation but must be brought within a reasonable time.

86. We glean from the record that defendant's motion to set aside default and final judgment was filed when knowledge first came to the defendant that the plaintiff was seeking satisfaction of the final judgment.

87. Such, in our opinion, is within the reasonable time requirement of the rule. Osceola, 238 So. 2d at 480 (emphasis in original). While it is true that Rule 1.540(b)(4) states that a motion for relief from a *void judgment* must be made within a "reasonable time," most courts have felt constrained to interpret the "reasonable time" requirement of the rule to mean no time limit when the judgment attacked is void.

88. Assuming that a judgment is null and void for lack of jurisdiction does a Rule 1.540(b) motion for relief not brought within a reasonable time have the effect of making a *void judgment* valid? The answer is "no."

89. Florida Rule of Civil Procedure 1.540 was acknowledged by its drafters to be substantially the same as Federal Rule 60. Like a Rule 1.540 motion, a federal motion for relief from a *void judgment* must be made within a "reasonable time."

90. The passage of time cannot make valid that which has always been void but it can and often does render valid that which was merely voidable or erroneously entered. *Ramagli Realty Co.*, 121 So. 2d at 654.

Case # 10-58746-CA-13

91. For all of the reasons previously discussed, we do not agree that the length of the delay in filing a motion to vacate after learning of the entry of a *void judgment* is legally significant since it is well established that the passage of time cannot make valid that which has been void from the beginning. See *Ramagli Realty Co. v. Craver*.

92. The appropriate procedure for attacking a *void judgment* is by a motion for relief from judgment pursuant to Florida Rule of Civil Procedure 1.540(b). *Tucker*, 389 So.2d at 684.

93. A judgment entered without notice to a party is void. *Falkner v. Amerifirst Fed. Sav. & Loan Ass'n*, 489 So.2d 758 (Fla. 3d DCA 1986); cf. *Grahn v. Dade Home Serv., Inc.*, 277 So.2d 544 (Fla. 3d DCA 1973) (where plaintiffs' failure to timely comply with trial court's order resulted in the dismissal of the complaint and entry of judgment against plaintiffs, the dismissal was reversed because the record failed to show that plaintiffs received notice of order); *McAlice v. Kirsch*, 368 So.2d 401 (Fla. 3d DCA 1979) (default judgment was void for failure to give notice to defendant even though defendant received original complaint which did not name him and summons which was not addressed to him). See generally *DeClaire v. Yohanan*, 453 So.2d 375 (Fla. 1984) (general discussion of the origin, purpose and application of Fla. R. Civ. P. 1.540(b)). Since the trial court specifically found that Shields had not received notice of the trial, the judgment was void. Because relief from a void judgment any be granted at any time, *Falkner*, 489 So.2d at 759, the trial court erred in denying Shields's motion as untimely. Consequently, the void judgment should be vacated.

94. This court and other Florida courts, both before and after the adoption of Florida Rule of Civil Procedure 1.540(b), have stated that a void judgment may be attacked "at any time" because a void judgment creates no binding obligation upon the parties, is legally ineffective, and is a nullity. See *Watkins v. Johnson*, 139 Fla. 712, 191 So. 2 (1939); *Malone v. Meres*, 91 Fla. 709, 109 So. 677 (1926);

95. Assuming that a judgment is null and void for lack of jurisdiction does a Rule 1.540(b) motion for relief not brought within a reasonable time have the effect of making a void judgment valid? The answer is "no." Florida Rule of Civil Procedure 1.540 was acknowledged by its drafters to be substantially the same as Federal Rule 60. Like a Rule 1.540 motion, a federal motion for relief from a void judgment must be made within a "reasonable time."

Case # 10-58746-CA-13

96. "A void adjudication has no legal or binding effect; it does not impair, or create, rights; it is not entitled to enforcement, and is ordinarily no protection to those who seek to enforce it. All proceedings founded on such an adjudication are regarded as invalid, for a ***void judgment*** or decree is regarded as a nullity, as mere waste paper.

## THIRD ARGUMENT

### "PLAINTIFF COMMITTED FRAUD ON THE COURT/PLAINTIFF SUBMITTED FRAUDULENT ASSIGNMENTS OF MORTGAGE TO THE COURT AS EVIDENCE"

97. The Defendant in preparing her defense did a research in the Public Records of Miami-Dade County, Florida and found that there are two Assignments of Mortgage recorded.

98. The first Assignment of Mortgage was recorded on 09/15/2008. CFN: 2008R0751021, OR BK 26567, Pages 0914-0915 (2 pages). The Assignor on the first Assignment of Mortgage is JPMorgan Chase Bank, N.A. and the Assignee is Chase Home Finance, LLC.

99. **This first Assignment of Mortgage recorded on 09/15/2008, is FRAUDULENT**

It is Fraudulent for the following reasons:
   i.  The document was signed by C. Housley as Assistant Secretary but it does not say for what company he/she is working for.
   ii. The document was signed in one State, most probably in Ohio but it was Notarized by a Notary Public in the State of Louisiana
   iii. It was witnessed by Christina Johnson, employee of the Assignee or employee of the Plaintiff's Law Firm, or employees of the company that prepared the documents but they were not employees of the original lender
   iv. C. Housley signed this AMO without being in the presence of the Notary Public that notarized this document

**Second Assignment of Mortgage recorded on 08/25/2010, is FRAUDULENT!**

100. To prove to the Court that Plaintiff owned the mortgage and have the right to foreclose, the Plaintiff submitted to the Court an Assignment of Mortgage as evidence, this would be the second Assignment of Mortgage.

101. The Plaintiff's complaint has as Exhibit "A", an Assignment of Mortgage recorded in Public Records of Miami-Dade County, Florida on 08/25/2010, CFN: 2001R0574828 OR BK 27398, Pges 1850- 1851 (2 pages)

Case # 10-58746-CA-13

102.    Defendant has discovered that this Assignment of Mortgage is FRAUDULENT.

This document was DOCTORED / FORGED.
It is Fraudulent for the following reasons:
   i.   This is NOT an original document.
   ii.  It does NOT have Original Signatures.
   iii. It is an exact copy of the same Assignment of Mortgage previously recorded on 09/15/2008, showing that all signatures and seal of the Notary Public are in the very same place on both Assignments of Mortgage.
   iv.  The top part of the page, above where it says "Space Above this line for Recorder's use" and the bottom part of the document were white out, then used again, leaving the very same dates, the same names of the person signing it, the same witnesses, the same notary public
   v.   Both Assignments of Mortgage were prepared the same date: 01/24/2008

103.    To make it look real and to make the Court believe that the Plaintiff is the owner and holder of the Mortgage and entitled to foreclose, the Assignor in this second Assignment of Mortgage is now Chase Home Finance, LLC, and the Assignee is WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3

104.    The Court CANNOT allow this kind of behavior and should sanction the Plaintiff and their attorneys for submitting fraudulent documentation to the Court

105.    This is not an isolated incident and this is not the first time the Plaintiff and/or their attorneys are discovered they committed fraud.

106.    Ben-Ezra & Katz, P.A., of Fort Lauderdale is the law firm that filed this complaint on plaintiff's behalf.

107.    The Attorney General of Florida Bill McCollum started an investigation against this law firm on August 29, 2010

**Allegation or issue being investigated:**
*Appears to be fabricating and/or presenting false and misleading documents in foreclosure cases. These documents have been presented in court before judges as actual assignments of mortgages and have later been shown to be legally inadequate and/or insufficient. Presenting faulty bank paperwork due to the mortgage crisis in thousands of foreclosures per month. This firm is one of the largest foreclosure firms in the State. This firm appears to be to be one of Docx, LLC a/k/a Lender Processing Services' clients, who this office is also investigating.*

Case # 10-58746-CA-13

## FOURTH ARGUMENT

### "THE PLAINTIFF AND ITS ATTORNEYS HAVE BEEN COMMENCING FORECLOSURE ACTION WITHOUT HAVING THE CORRECT DOCUMENTATION AND HAVE BEEN FILING DOCUMENTATION PROVIDED BY DOCX WHICH HAS TURNED OUT TO BE FRAUDULENT"

108.     The named Plaintiff Wells Fargo and the original Law Firm of Benz-Era & Katz, P.A. have been filing foreclosure actions in different jurisdiction using fraudulent documentation prepared by DOCX.

109.     The Plaintiff and its original Attorney in this foreclosure action the Law Office of BENZ-ERA & KATZ, P.A violated just about every Rule of the Florida Rules of Civil Procedures and just about every Statute of the Florida Statutes regarding foreclosures and even Federal Laws and they have a history of doing the same in different Courts throughout the State of Florida. Fannie Mae cancelled their contract with The Law Office of Benz-Era & Katz,

110.     Defendant will prove beyond any reasonable doubt that the Plaintiff and their original Law Firm of "BEN-EZRA & KATZ, P.A." have commenced foreclosure actions and have filed fraudulent documentation in different jurisdictions  throughout the State of Florida,

111.     As a matter of fact, the following law firms were target of investigation by the Florida Attorney General and other Federal Agencies for filing fraudulent documentation, Affidavits without having personal knowledge, etc.:

> 1. David Stern
> 2. Marshall C. Watson
> 3. Shapiro & Fishman
> 4. Florida Default Law Group
> 5. Kahane & Associates,
> 6. Daniel C. Consuegra
> 7. Albertelli Law and
> 8. **Ben-Ezra & Katz.**

.

112.     Ben-Ezra & Katz is the law firm that the Plaintiff hired and filed  the complaint in defendants case without having the right documentation and without having standing to foreclose.

Case # 10-58746-CA-13

### A.  THE LAW FIRM OF BEN-EZRA & KATZ

113.        The Law Firm of Ben-Ezra & Katz, P.A., has been the target of different investigations by State and Federal Agencies for the filing of fraudulent documentation in different jurisdictions

114.        On February 23, 2011, Attorney General opened a probe into eighth foreclosure firm "State investigators say Ben-Ezra & Katz presented false and misleading documents to judges"

115.        Here is an article from the Sun Sentinel regarding the investigations on the Law Firm of  Ben-Ezra & Katz, PA by the Florida Attorney General:

February 23, 2011|Diane C. Lade, Sun Sentinel
The Florida Attorney General has opened an investigation into Ben-Ezra & Katz, a Hollywood law firm that processses thousands of foreclosures for lenders, on allegations of presenting false and misleading documents in court.

Ben-Ezra is the eighth high-volume foreclosure practice targeted by state investigators within the past year regarding similar claims involving paperwork submitted to judges. The firm last week laid off 236 of its 568 employees days after the government-owned mortgage giant Fannie Mae terminated its relationship, citing "document execution" issues.

The Florida Bar also is investigating firm partners Marc Ben-Ezra and Marvin Katz, on one complaint each involving foreclosure fraud. Bar officials would not say when its investigation began.

Ben-Ezra spokesman Ray Casas declined to comment on the state investigation. He did release a statement announcing the law office had retained former federal prosecutor and 10-year state legislator Dan Gelber to "provide support with quality control and to help evaluate policies and procedures."

Gelber, a Democrat, ran for Florida Attorney General last year, losing to Pam Bondi.

In its investigation filing, the Attorney General's Office said fabricated or misleading documents had been "presented in court before judges as actual assignments of mortgages and properly prepared affidavits that have later been shown to be inadequate and/or insufficient."

Miami-Dade Circuit Judge Maxine Cohen Lando this month castigated Marc Ben-Ezra for "wasting the court's time" by filing "sham foreclosure documents" involving the repossession of a Homestead property. Lando cited him for contempt.

The Attorney General has argued in all eight of its foreclosure investigations that the firms' business procedures violated the state's unfair and deceptive trade pratices act.

The seven other law offices being investigated, of which four are based in South Florida, include: David J. Stern, Marshall C. Watson, Shapiro & Fishman, Florida Default Law Group, Kahane & Associates, Daniel C. Consuegra and Albertelli Legal.

Fort Lauderdale law firm Ben-Ezra & Katz is the most recent subject of the state attorney general's mortgage fraud investigation. The firm "appears to be fabricating and/or presenting false and misleading documents in foreclosure cases," according to the allegation listed by the office of Florida's attorney general, Pam Bondi.

Before the layoffs, the law firm and title company had 536 employees, meaning the recent cuts translate to a 40 percent reduction in staff. No further layoffs are planned at this time, according to a company media representative.

Case # 10-58746-CA-13

### B. FANNIE MAE TERMINATED THEIR SERVICE WITH THIS LAW FIRM

116.     Fannie Mae terminated their service with this law firm. As soon as the investigation was started by the Florida State Attorney Office, Fannie Mae terminated their contract with this law firm (See attached Servicing Notice from Fannie Mae announcing the Termination of Relationship with the Law Firm of Ben-Ezra & Katz, P.A., dated February 10, 2011, marked as Exhibit "A")

117.     In this February 2011 announcement, Fannie Mae eliminated this large Florida firm from its attorney network, effectively barring the firm from representation on existing Fannie Mae owned loan cases and any future cases. The firm, which had handled 18,000 cases and employed six hundred people, admitted that it had "proactively" alerted Fannie Mae about documentation problems after hiring an outside law firm to conduct an audit in light of the national robo-signing news. One example of Ben-Ezra's conduct was filing a count stating that the subject note and mortgage were lost, then filing those very documents months later. Worse, when the note and mortgage were filed, they pertained to an entirely different property altogether. Layoffs soon followed the Fannie Mae termination, and the Florida Attorney General announced an investigation into the firm. Just over two months later, Ben-Ezra & Katz closed its foreclosure business.

### C. LAW FIRM OF BEN-EZRA & KATZ, P.A. ISSUES A PRESS RELEASE REGARDING FRAUDULENT DOCUMENTATION IN THEIR FILES

118.     Final Judgment in this matter was entered using information provided while Plaintiff was represented by former counsel, Ben-Ezra & Katz, P.A. Since then, former counsel has issued a press release in which it emphasized that although "there is no issue of whether the information in the affected files is correct", there is a question of "whether the correct original affidavits were attached to each file."  A copy of the press release is attached and marked as Exhibit "B".

119.     Accordingly, it may no longer be equitable that the judgment in this matter should have prospective application.

Case # 10-58746-CA-13

120.     There are many cases in the State of Florida that have been dismissed and/or Final Judgments have been vacated, actions requested by the Plaintiff's new attorneys.

121.     Defendants did an extensive research and discovered that in the Circuit Court of the 11th Circuit In and For Miami-Dade County, Florida, many foreclosure cases have been dismissed and/or summary judgments have been vacated because of fraudulent or faulty paperwork filed by the Plaintiff's law firm.  In one case, Case # 2008-37960-CA-24, a Summary Judgment was entered on 11/03/2009, using information and documentation provided by the Plaintiff's Original Attorney, Benz-Era & Katz, P.A. and said Summary Judgment was later Vacated on 01/15/2013 by the Plaintiff's new attorney the Law Office of ALDRIGE CONNOR, LLP, representing the Plaintiff in that foreclosure action who happens to be the same law firm representing this Plaintiff in this foreclosure action.

122.     Benz-Era & Katz handled an estimated 15,000 Fannie Mae foreclosure cases when Fannie Mae terminated their services. The Law firm acknowledged it found "Technical paperwork issues" in its foreclosure proceedings.  JP Morgan chase sued the firm to force them to return its foreclosure cases.

123.     Benz-Era & Katz closed as a result of investigation by the Florida Attorney Generals Office.  The probe focused on whether the firm was "fabricating and/or presenting false and misleading documents in foreclosure cases"

124.     Benz-Era & Katz, P.A., is the law firm that initiated this instant action of foreclosure when they filed the complaint in this foreclosure action or around 10/10/2008.  The Plaintiff's complaint contain missing documentation, fraudulent and/or misleading information

**LEFT BLANK ON PURPOSE**
**TO CONTINUE, GO TO NEXT PAGE**

Case # 10-58746-CA-13

## FIFTH ARGUMENT

## "CURRENT PLAINTIFF'S ATTORNEY COMMITTED INTRINSIC FRAUD"

### DEFENDANT CARMEN TAUFER'S
### MOTION FOR SANCTIONS AGAINST PLAINTIFF AND NEW ATTORNEY FOR USING FRAUDULENT INFORMATION FILED BY THE FIRST ATTORNEY AND NOT INFORMING THE COURT ABOUT IT

125.     Pursuant to Rule 1.540(b),(5), Florida Rules of Civil Procedures, Defendant moves this Honorable Court for entry of an Order Vacating Summary Judgment entered on 03/19/2014, in favor of the Plaintiff, to Vacate the Sale of the Defendant's property of 09/18/2014, Vacate the Certificate of Sale issued on 09/23/2014, and Dismissing this foreclosure action with prejudice in supports thereof states:

126.     The Defendant was previously represented by counsel before her property was sold in public auction. This attorney/client relationship ended with the sale of her property.

127.     The Final Judgment of Foreclosure in this matter was entered by the Plaintiff not attaching copy of the promissory note, not having a properly recorded Assignment of Mortgage, by using faulty documentation, by providing false statements to the Court, committing in the process Extrinsic and Intrinsic Fraud by Plaintiff's Original Attorney The Law Office of Benz-Era & Katz, P.A, when the Plaintiff's Complaint was filed on 11/04/2010, by former counsel, Ben-Ezra & Katz, P.A.

128.     To Defendant's best knowledge, Benz-Era & Katz, P.A. (The Original Law Firm that filed this foreclosure action with questionable paperwork on 11/04/2010

129.     This law firm was replaced on or around 07/29/2011

130.     The Summary Judgment entered on 03/19/2014, in favor of the named Plaintiff was obtained using the faulty documentation and fraudulent assignment of mortgage provided by Plaintiff's original Atty Benz-Era & Katz, PA..

131.     A few months before the named counsel Benz-Era & Katz, P.A was replaced, they issued a press release dated 02/10/2011, at 6:00 pm, in which it emphasized that although "there is no issue of whether the information in the affected files is correct", there is a question of "whether the correct original affidavits were attached to each file." (A copy of the press release is attached and marked as Exhibit "A").

Case # 10-58746-CA-13

132.    The new attorney representing the Plaintiff have used the very same faulty / fraudulent questionable documentation, originally provided by the Original Law firm of Benz-Era & Katz, P.A when they first filed the defective Lis Pendens and Complaint on behalf of the named Plaintiff.

133.    The Original Affidavits containing incorrect or fraudulent documentation such as Fraudulent Assignments of Mortgage has been present in the file of Defendant Carmen Taufer from the very beginning.

134.    Accordingly, it may no longer be equitable that the judgment in this matter should have prospective application.

135.    As a result of this Press Release by Benz-Era & Katz, P.A, there have been many cases in the State of Florida in which the new Law Firm replacing Benz-Era & Katz, PL.A, have been dismissed and/or Final Judgments have been vacated, by the same Plaintiff's new hired attorneys after realizing of the many faulty/fraudulent documentation filed in different courts by this law firm.

136.    Defendants did an extensive research and discovered that in the Circuit Court of the 11th Circuit In and For Miami-Dade County, Florida, some foreclosure cases have been dismissed and/or summary judgments have been vacated because of faulty paperwork filed by The Law Office of Ben-Ezra & Katz, P.A., the Plaintiff's Original Attorneys. The Motions To Vacate Judgment in most cases have been filed by the Plaintiff's new Attorneys after Fannie Mae terminated their contract with Benz-Era & Katz, P.A.

137.    In one case discovered by Defendant, Case # 2008-37960-CA-24, a Summary Judgment was entered on 11/03/2009, using information and documentation provided by the Plaintiff's Original Attorney, Benz-Era & Katz, P.A. and said Summary Judgment was later Vacated on 01/15/2013 AFTER the Plaintiff's new attorney the Law Office of ALDRIGE CONNORS, LLP, replaced Ben-Era & Katz, P.A. and filed a Motion to Vacate Judgment. (See attached Order Vacating the Judgment, on Plaintiff's Motion to Vacate Judgment, marked as Exhibit "B")

138.    This Motion To Vacate Summary Judgment in that particular case was actually filed by the Plaintiff's new Attorney The Law Office of Aldrige Connors, LLP and the Court issued an Order Vacating said Summary Judgment in that particular case.

Case # 10-58746-CA-13

139.    Benz-Era & Katz handled an estimated 15,000-18,000 Fannie Mae foreclosure cases when Fannie Mae terminated their services on or around January, 2011.

140.    The Law firm acknowledged it found "Technical paperwork issues" in its foreclosure proceedings.  JP Morgan chase sued the firm to force them to return its foreclosure cases.

141.    Benz-Era & Katz closed its operations as a result of investigation by the Florida Attorney Generals Office.

142.    The probe focused on whether the firm was "fabricating and/or presenting false and misleading documents in foreclosure cases"

143.    Benz-Era & Katz, P.A., is the law firm that initiated this instant action of foreclosure when they filed the complaint in this foreclosure action or around 11/04/2010. The Plaintiff's complaint contain faulty/fraudulent documentation and/or misleading information

144.    The new law firm, The Law Office of **GARY I. GASSEL, ESQUIRE**, PL,  knew or should have known about the Plaintiff's previous attorneys  findings of fraudulent documentation in their files.

145.    The summary judgment of foreclosure was obtained by the Plaintiff filing fraudulent documentation, affidavits without having personal knowledge and by misrepresenting facts to the court.

146.    This is a foreclosure case in which WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3 "Plaintiff") seeks to take the home of defendant CARMEN TAUFER ("Defendant") illegally.

147.    The Court cannot allow this kind of behavior by the Plaintiff and/or their Attorney

WHEREFORE, Defendant, respectfully requests this Honorable Court issues an Order Vacating Summary Judgment entered on 03/19/2014, Vacating the Sale of  Defendant's property of 09/18/2014, Vacating the Certificate of Sale issued on 09/23/2014, and Dismiss this case with Prejudice on the grounds that Negligence has been committed on this Court by the Plaintiff, Plaintiff's previous Attorneys and/or Representatives filing with this Court questionable documentation as stated on the Press Release of Plaintiff's Original Attorney, Ben-Ezra & Katz

Case # 10-58746-CA-13

### REGARDING THE NOTE AND THE ALLONGES
### "THE ALLONGES ATTACHED TO PLAINTIFF'S COMPLAINT
### ARE NULL AND VOID"

148.   There is a dearth of case law to which the Court could look to for guidance when deciding matters dealing with allonges.  A search on Westlaw reveals that the entire universe of Florida cases, both in State and Federal courts, is two: <u>Booker v. Sarasota, Inc.</u>, 707 So. 2d 886 (Fla 1st DCA 1998) and <u>In re Canellas</u>, 2010 WL 571808 (Bankr. M.D. Fla. Feb. 9, 2010).  Moreover, a search of the word "allonge" on Westlaw for the entire American judicial system, both State and Federal, reveals only 274 documents.  It should be noted by the Court, however, that the vast majority of these cases only mention allonges in passing, most often reciting the Black's Law Dictionary definition of an allonge in the footnote of the decision or simply making reference to an allonge when reciting the facts of the case.  Very few opinions, then, delve into actual substantive matters regarding allonges.

149.   According to the only Florida appellate case which deals with these ancient documents, "[a]n allonge is a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself.  Such must be so firmly affixed thereto as to become a part thereof." <u>Booker</u>, 707 So. 2d at 886 (Fla 1st DCA 1998).  *See also* <u>U.S. Bank National Association v. Weigand</u>, 2009 WL 1623764 (Conn. Super. 2009); <u>P&B Properties I, LLC v. Owens</u>, 1996 WL 111128 (Del. Super. 1996).

150.   Furthermore, while "Florida's Uniform Commercial Code does not specifically mention an allonge, [the Code] notes that 'for purposes of determining whether a signature is made on an instrument, a paper affixed to the instrument is made part of the instrument.' Fla. Stat. §673.2041(1) (1995)." <u>Booker</u>, 707 So. 2d at 886 (Fla. 1st DCA 1998).

151.   In this foreclosure action, the Allonge attached to the Plaintiff's complaint does not have a date, the State of Florida does not recognize Assistant Secretary as a valid title to transfer property.

Case # 10-58746-CA-13

### THE PURPORTED ALLONGES WERE NOT FIRMLY AFFIXED TO THE PROMISSORY NOTE

     **a. Legal Standards**

152.     Fla. R. Civ. P. 1.140(b)(6) provides, in pertinent part, that "the following defenses may be made by motion at the option of the pleader…failure to state a cause of action." In ruling on a motion to dismiss for failure to state a cause of action, the trial court must assume that all allegations in the complaint are true and decide whether the Plaintiff would be entitled to relief. Carmona v. McKinley, Ittersagen, Gunderson & Berntsson, P.A., 952 So.2d 1273 (Fla. 2d DCA 2007). Nevertheless, as indicated in the Standard of Review discussion, *supra*, exhibits attached to the Plaintiff's complaint are part of the complaint, and where the allegations made in the complaint do not agree with the exhibits attached, the exhibits control.

153.     There is no Florida case on point which provides guidance as to how an allonge must be physically attached to an instrument in order for it to become "firmly affixed" to same. Therefore, the Court may look to decisions of courts in other states for persuasive authority. To begin, two reasons have been cited for the "firmly affixed" rule: (1) to prevent fraud; and (2) to preserve a traceable chain of title. *See* Adams v. Madison Realty & Development, Inc., 853 F. 2d 163, 167 (3d Cir. 1988). A draft of the 1951 version of the UCC Article 3 included the comment that "[t]he indorsement must be written on the instrument itself or an allonge, which, as defined in Section _____, is a strip of paper so firmly pasted, stapled or otherwise affixed to the instrument as to become part of it." ALI, Comments & Notes to Tentative Draft No. 1 – Article III 114 (1946), reprinted in 2 Elizabeth Slusser Kelly, Uniform Commercial Code Drafts 311, 424 (1984). More recently, however, courts have held that "stapling is the modern equivalent of gluing or pasting." Lamson v. Commercial Cred. Corp., 187 Colo. 382 (Colo. 1975). *See also* Southwestern Resolution Corp. v. Watson, 964 S.W. 2d 262 (Texas 1997) (holding that an allonge stapled to the back of a promissory note is valid so long as there is no room on the note for endorsement, but affixed does not include paperclips.). Regardless of the exact method of affixation, numerous cases have rejected endorsements made on separate sheets of paper loosely inserted in a folder with the instrument and not physically attached in any way. *See* Town of Freeport v. Ring, 1999

Case # 10-58746-CA-13

Me. 48 (Maine 1999); <u>Adams v. Madison Realty & Development, Inc.</u>, 853 F. 2d 163 (3d Cir. 1988); <u>Big Builders, Inc. v. Israel</u>, 709 A. 2d 74 (D.C. 1988).

### b.  Argument

154.    Here, the Plaintiff's purported allonges, as attached to the Plaintiff's Complaint are in no way so firmly affixed to the Promissory Note as to give the Plaintiff the ability to raise a cause of action for foreclosure of a mortgage and note which is made out to someone other than itself.

155.    Specifically, when Defendants examined the purported allonges, they were not affixed to the Promissory Note nor, upon information and belief, these purported allonges currently affixed to the Promissory Note.

156.    Because the purported allonges are not affixed to the Note, the twin aims of affixation, namely to prevent fraud and to preserve a traceable chain of title, have expressly not been met.

**WHEREFORE,** Defendant, Carmen Taufer moves to DISMISS this foreclosure action / Complaint with Prejudice on the grounds that fraud has been committed on this court by the Plaintiff, Plaintiff's Attorneys and /or their representatives and demands sanctions against the Plaintiff and/or its Attorneys.

### THE PROMISSORY NOTE CONTAINED ROOM FOR ENDORSEMENT

### a.  Legal Standards

66   There is also no Florida case law which provides guidance on how to decide "No-Space Tests", or how to proceed when there is room on the instrument for an endorsement but an allonge is nevertheless attached instead.  However, numerous jurisdictions permit allonges only where, because of multiple endorsements, no additional space for signatures remains on the negotiable instrument. *See* <u>Shepherd Mall St. Bank v. Johnson</u>, 603 P. 2d 1115, 1118 (Okla. 1979); <u>Tallahassee Bank & Trust Company v. Raines</u>, 187 S.E. 2d 320, 321 (Ga. App. 1972); <u>James Talcott, Inc. v. Fred Ratowsky Assoc., Inc.</u>, 38 Pa. D. & C.2d 624 (Pa. Ct. of Common Pleas 1965). *But see* <u>Crosby v. Roub</u>, 16 Wis.

Case # 10-58746-CA-13

616, 626-27 (Wis. 1863) (allonge permitted even where space remains on note).  Perhaps the seminal case which deals with the issue is <u>Pribus v. Bush</u>, 118 Cal. App. 3d 1003 (Cal. App. 1981), which reasoned that the law merchant rule [which permits the use of allonges only when there is no room on the instrument itself]…was developed as a refinement of the basic rule that an endorsement must be on the instrument itself. This basic rule must have become impractical when strictly applied in certain multiple endorsement situations, due to the finite amount of space on any given instrument. <u>The allonge, then, was apparently created to remedy the inconveniences of the basic rule, not as an alternative method of indorsement</u>.  <u>Id</u> at 1008.  *Emphasis added*.

67  The <u>Pribus</u> court ultimately decided that the majority view is to follow the law merchant rule and only permit allonges when there is no physical space left on the instrument itself. <u>Id</u>.

    **b.  Argument**

68  Here, the two allonges were improper because there is ample blank space on the Promissory Note filed with the Plaintiff's Complaint to stamp an endorsement. This includes abundant space both below the Plaintiff's alleged signature and on the back of the Note.

69  Florida courts, in the absence of a Florida case directly on point, should follow the majority rule which only allows the use of an allonge when there is no room on the instrument itself for endorsement.  Doing so preserves the law merchant rule, an ancient principal of commercial law.

70  Because the allonge was improper, the Mortgage and the Note are endorsed to someone other than the Plaintiff, and therefore the Plaintiff does not have the ability to raise the cause of action for foreclosure.

**WHEREFORE**, because the Plaintiff failed to state a cause of action upon which relief can be granted within the four corners of the Complaint or in any other Pleading or Filing, the instant case must be dismissed.

Case # 10-58746-CA-13

## SIXTH  ARGUMENT

## "DEFENDANT DEMANDS SANCTION OF DISMISSAL WITH PREJUDICE AGAINST THE NAMED PLAINTIFF AND/OR  ITS ATTORNEYS FOR FILING FRAUDULENT ASSIGNMENTS OF MORTGAGE AND OTHER QUESTIONABLE DOCUMENTATION"

### a.  Legal Standards

157.     The sanction of dismissal with prejudice due to fraud upon the court has long been an available remedy for a party's misconduct in the litigation process. It has been held that "a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends." See Metro. Dade County v. Martinsen, 736 So. 2d 794, 795 (Fla. 3d DCA 1999). Dismissal is an available remedy for knowingly submitting forged or altered documents with the intent to deceive the court. Bob Montgomery Real Estate v. Djokic, 858 So. 2d 371, 372 ( Fla. 4th DCA 2003)…

158.     The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's  claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)

159.     A trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a party perpetrates a fraud on the court or willfully refuses to comply with a court order. We share that inherent authority. See Kornblum v. Schneider, 609 So. 2d 138, 139 (Fla. 4th DCA 1992)

160.     The Plaintiff in this foreclosure action committed fraud on the Court and Defendant will provide the evidence of fraud to prove beyond any reasonable doubt that this Plaintiff was not the Owner of the Note and Mortgage, that it did not have standing to foreclose and benefit from the proceed of the sale of the Defendant's property.

161.     Fla. R. Civ. P. 1.210(a) provides, in pertinent part, that "every action may be prosecuted in the name of the real party in interest, but a personal representative, administrator, guardian, trustee of an express trust, a party with whom or in whose name

Case # 10-58746-CA-13

a contract has been made for the benefit of another, or a party expressly authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought."

162.     Recently, the Second District held that Plaintiffs in foreclosure actions are required to establish, through admissible evidence, that it held the note and mortgage in question and so had standing to foreclose the mortgage before it would be entitled to summary judgment in its favor.  BAC Funding v. Jean-Jacques, 2010 WL 476641 (Fla. 2d DCA 2010).

163.     Furthermore, the Second District held that whether such a Plaintiff does so through valid assignment, proof of purchase of the debt, or evidence of an effective transfer, they are nevertheless required to prove that it validly held the note and mortgage which it sought to foreclose.  Id.  In BAC Funding, the Second District ultimately ruled that an incomplete, unsigned and unauthenticated assignment of mortgage attached as an exhibit to the Plaintiff's response to the Defendant's motion to dismiss did not constitute admissible evidence establishing the Plaintiff's standing to foreclose on the note and mortgage in question.

164.     Additionally, the Bankruptcy Court of the Middle District of Florida recently denied a movant's motion for relief from stay so the movant could foreclose on real property owned by a debtor, in part, because the movant did not establish that it was the real party in interest through a valid allonge.  In re Canellas, 2010 WL 571808 (Bankr. M.D. Fla. Feb. 9, 2010).  There, the movant accompanied its motion with a mortgage and note which were endorsed to someone other than itself.  Some three months later, the movant filed an allonge with the Court which purportedly endorsed to it the mortgage and the note.  However, the allonge was not notarized nor was it dated.  The Court ultimately denied the movant's motion and questioned the veracity of the allonge because, amongst other reasons, the allonge was not: (1) dated; or (2) notarized.

### b.  Argument

165.     Here, the Plaintiff has failed to provide any admissible evidence that it is entitled to proceed in this action. The named lender according to the Plaintiff's own Complaint is JPMORGAN CHASE BANK, N.A

Case # 10-58746-CA-13

166.     The Record is completely devoid of how WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3 has come into existence or how it can legally hold a mortgage or note.

167.     The purported allonge which the Plaintiff alleges gives it the power to enforce the Mortgage and Note in question is not dated nor is it notarized.

168.     The Note attached to the Plaintiff's complaint DOES NOT have a valid allonge transferring, indorsing the Note to the Plaintiff. There is no date.

169.     In addition, this note was sold to a Trust.  The Trust gave a stock in the trust, making that note null and void as it was replaced by one stock of that trust.


## **SEVENTH ARGUMENT**

### **"FRAUDULENT ASSIGNMENT OF MORTGAGE SPLITS THE NOTE AND MORTGAGE"**

170.     The fraudulent assignment of mortgage effectively, splits the mortgage and the note.

171.     The mortgage, as evidenced by the mortgage instrument, is only a mere incident to the debt. Therefore, the mortgage instrument is of lesser significance. Because the assignment of the note is an imperative act as to the transferring of the mortgagee's right, the assignment of the mortgage instrument without the note is an ineffective assignment. Vance v. Fields, 172 So. 2d 613 (Fla. 1 DCA 1965); Sobel v. Mutual Dev. Inc., 313 So. 2d 77 (Fla. 1 DCA 1975); Amacher v. Keel, 358 So. 2d 889 (Fla. 2 DCA 1975)

172.     "The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.]

173.     Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default.

174.     The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.]

Case # 10-58746-CA-13

175.     **The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust**." <u>Bellistri v. Ocwen Loan Servicing, LLC</u>, 284 S.W.3d 619, 623 (Mo. App. 2009). (Emphasis added.)

**EIGHTH ARGUMENT**

**"IMPROPER` VERIFICATION OF COMPLAINT"**

176.     The Plaintiff's Complaint in this foreclosure action was improperly verified

177.     Whether a residential foreclosure complaint is improperly verified when a verification:

    1) is not included within the Complaint, but is a separately captioned document;
    2) fails to identify the document that is being verified; and,
    3) it is verified by a non-party to the foreclosure action..

178.     The Plaintiff attached to the Complaint a separate document, which is not part of the Complaint. One cannot tell which document is being verified and there is no reference to which document is being verified and it was signed by a non-party to this foreclosure action and did not have knowledge of what was being verified.  In addition, the Verification is signed by Rose C. Lara on behalf of Rushmore Loan Management Services, LLC, As Attorney In Fact for  WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3

**APPLICABLE LAWS AND RULES**

    *a.*     ***Florida Statute requires a verification to identify the document being verified***

Florida Statutes section 92.525 requires that a verification actually identify the document being verified.  This statute provides in part:

Verification of documents; perjury by false written declaration, penalty.—
(1)When it is authorized or required by law, by rule of an administrative agency, or by rule or order of court that a document be verified by a person, the verification may be accomplished in the following manner:
    (a)Under oath or affirmation taken or administered before an officer authorized Under s. <u>92.50</u> to administer oaths; or

    (b)By the signing of the written declaration prescribed in subsection (2).

Case # 10-58746-CA-13

(2)A written declaration means the following statement: "Under penalties of perjury, I declare that I have read the foregoing *[document]* and that the facts stated in it are true," followed by the signature of the person making the declaration, except when a verification on information or belief is permitted by law, in which case the words "to the best of my knowledge and belief" may be added. The written declaration shall be printed or typed at the end of or immediately below the document being verified and above the signature of the person making the declaration.
. . . .
(4)As used in this section:
. . . .
*(b)The term "document" means any writing including, without limitation, any form, application, claim, notice, tax return, inventory, affidavit, pleading, or paper.*

(c)The requirement that a document be verified means that the document must be signed or executed by a person and that the person must state under oath or affirm that the facts or matters stated or recited in the document are true, or words of that import or effect. [*emphasis mine*]

**b.      *The Florida Supreme Court Rules require that the verification of a residential foreclosure Complaint be contained within the Complaint document***

On February 11, 2010, the Florida Supreme Court amended Fla. R. Civ. Pro. 1.110(b) to read:

> [w]hen filing an action for foreclosure of a mortgage on residential real property the complaint shall be verified.  When verification of **a document** is required, **the document** shall include an oath, affirmation, or the following statement:  Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.  [***Emphasis mine***]

**The Supreme Court noted that:**

[t]he primary purposes of this amendment are: (1) to provide incentive for the plaintiff to appropriately investigate and verify its ownership of the note or right to enforce the note and ensure that the allegations in the complaint are accurate; (2) to conserve judicial re sources that are currently being wasted on inappropriately pleaded "lost note" counts and inconsistent allegations; (3) to prevent the wasting of judicial resources and harm to defendants resulting from suits brought by plaintiffs not entitled to enforce the note; and (4) to give trial courts greater authority to sanction plaintiffs who make false allegations. In re: Amendments to the Florida Rules of Civil Procedure, No. SC09-1579, (Feb. 11, 2010).

Case # 10-58746-CA-13

On December 9, 2010, the Supreme Court clarified its position in Case No. SC09-1579, "In re: Amendments to the Florida Rules of Civil Procedure-Form (Final Judgment of Foreclosure)" and stated:

Along with the amendments to form 1.996(a), rule 1.110(b) was amended to require verification of mortgage foreclosure complaints involving residential real property. One of the primary purposes of this amendment was to ensure that the allegations in the complaint are accurate.  In light of recent reports of alleged document fraud and forgery in mortgage foreclosure cases, this new requirement is particularly important. (At pages 2 and 3)

### APPLICATION OF RULE TO FACTS

179.     This is an action for foreclosure of residential real property owned by the defendant.  The named Plaintiff in this case is WELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC  TRUST SERIES 2010-3 (hereinafter, "Plaintiff").  The Plaintiff initiated this action when it filed its complaint on or about November 4, 2010. The Complaint document is devoid of any oath, affirmation, or verification statement which should state "under penalty of perjury, I declare that I have read the attached Complaint, and the facts alleged therein are true and correct to the best of my knowledge and belief" as mandated by Fla. R. Civ. Pro. 1.110(b).

180.     At the time service of process was effected, a separately captioned floating document entitled "Fla. R. Civ. P. 1.110(b) Verification" was also served upon the defendants.  This document does not state what document is being verified.  The document states in part ". . . I declare I have read the foregoing, . . .", but it does not identify what "foregoing" is referring to.

181.     Florida Statutes section 92.525 and the Florida Supreme Court amendments to form 1.996(a) and to Fla. R. Civ. Pro. 1.110(b) both require that the Complaint document itself be verified and a floating verification is not permissible.  Additionally, a floating verification which does not identify the document being verified utterly fails the purpose of verification of a complaint – to ensure that the allegations are true.

182.     The Plaintiff attached to the Complaint a separate page a document titled FLA. R. CIVL. P.110(b) VERIFICATION  reading as follows:

Case # 10-58746-CA-13

> Under penalty of perjury, I declare that I have read the foregoing, and the facgts alleged therein are true and correct to the best of my knowledge and belief" Rushmore Loan Management Service, LLC, As Attorney In Fact foWELLS FARGO BANK, N.A. NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST SERIES 2010-3

183.      On December 9, 2010, the Supreme Court clarified its position in Case No. SC09-1579, "In re: Amendments to the Florida Rules of Civil Procedure-Form (Final Judgment of Foreclosure)" and stated:

> Along with the amendments to form 1.996(a), rule 1.110(b) was amended to require verification of mortgage foreclosure complaints involving residential real property.  One of the primary purposes of this amendment was to ensure that the allegations in the complaint are accurate.  In light of recent reports of alleged document fraud and forgery in mortgage foreclosure cases, this new requirement is particularly important.  (At pages 2 and 3)

184.      Here, the attempted verification of the complaint fails to meet the strict requirements of Fla. R. Civ. P. 1.110(b).  The verification is qualified by the use of the provision: "to the best of my knowledge and belief." This is the lower standard reserved for non-residential foreclosures and documents and not allowed on a complaint for foreclosure of a residential foreclosure.  Wherefore, the verification must be struck and the complaint dismissed.

185.      ROSE C. LARA verified the complaint. Just below her signature is the vague statement that RUSHMORE LOAN MANAGEMENT SERVICES, LLC is acting as a Servicer for the plaintiff.  A servicer is an attorney in fact.

186.      This status requires a written power of attorney and compliance with Florida Statutes section 709.08(2), which provides:

> **WHO MAY SERVE AS ATTORNEY IN FACT**.--The attorney in fact must be a natural person who is 18 years of age or older and is of sound mind, or a financial institution, as defined in chapter 655, with trust powers, having a place of business in this state and authorized to conduct trust business in this state. A not-for-profit corporation, organized for charitable or religious purposes in this state, which has qualified as a court-appointed guardian prior to January 1, 1996, and which is a tax-exempt organization under 26 U.S.C. s. 501(c)(3), may also act as an attorney in fact. Notwithstanding any contrary clause in the written power of attorney, no assets of the principal may be used for the benefit of the corporate attorney in fact, or its officers or directors.

Case # 10-58746-CA-13

187.    Because verification of the complaint is a prerequisite to suit, the power of attorney/servicing agreement must be attached to the complaint to demonstrate capacity and standing.   The failure to attach the servicing agreement to the complaint requires dismiss of the complaint

188.    Therefore, **Qualified verification is IMPROPER**

Improper verification of foreclosure complaints is one of the major grounds upon which motions to dismiss are routinely granted with leave to amend but in this case it should be dismissed with leave to amend.  The foreclosure action should be dismissed with prejudice as a sanction to the Plaintiff and its attorneys LIED on the Complaint and they both verified as a true fact .

Here's one of the opinions from the court of appeal that sets legal foundation for proper verification – Balinger v. Bay Gulf Credit Union, 51 So. 3d 528 (Fla. 2nd DCA 2010).

http://scholar.google.com/scholar_case?q=51+So.+3d+528&hl=en&as_sdt=2,10&case=1640
1865565334925242&scilh=0

It states that a verified complaint may serve the same purpose as an affidavit supporting or opposing a motion for summary judgment.  However, in order to be so considered, the allegations of the verified complaint must meet the requirements of the rule governing supporting and opposing affidavits.  Rule 1.510(e), Florida Rules of Civil Procedure, provides that affidavits must be based on personal knowledge and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  A verification, which is improperly based on information and belief, is insufficient to entitle the verifying party to relief because the verification is qualified in nature.

**LACK OF ATTACHMENT OF POWER OF ATTORNEY**

    *i.*    *Law*

**Florida Statutes section 709.01 states in part:**

Power of attorney; authority of nominee when principal dead.

…. If the exercise of the power requires the execution and delivery of any instrument which is recordable under the laws of this state, such affidavit shall likewise be recordable….

 The Freddie Mac Document Custody Procedures Handbook, at page 24 provides:

Case # 10-58746-CA-13

**Power of Attorney**

If the Note is executed on behalf of the Borrower by an attorney-in-fact pursuant to a Power of Attorney (POA), it must be clear that the Note has been signed by an attorney-in-fact. You must verify that the POA is dated on or before the Note Date.
The Seller must deliver the original notarized POA. The Custodian is not expected to review the content of the POA. See <u>Guide Section 16.5</u> for additional information.
Freddie Mac requires that a POA be notarized even if state law or local customs do not.

189.       Wherefore, the verification must be struck and the complaint dismissed with prejudice.

<u>**NINETH ARGUMENT**</u>

**DEFECTIVE LIS PENDENS**
**VIOLATION OF FLORIDA STATUTE 48.23**
**STATUTORY VIOLATION**

THE LIS PENDENS RECORDED IN THIS ACTION DOES NOT HAVE THE NAME OF THE REAL PARTY, DOES NOT HAVE THE DATE OF THE INITIATION OF THIS ACTION AND IS NOT AGAINST ANY RECORDED INSTRUMENT (MORTGAGE), AS REQUIRED BY FLORIDA STATUTE 48.23, ON LIS PENDENS. SAID LIS PENDENS AND ALL ACTION TAKEN THEREAFTER ARE NULL AND VOID

- "When the initial pleading does not show that the action is founded on a duly recorded instrument or on a lien claimed under part I of chapter 713, the court may control and discharge the notice of lis pendens as the court may grant and dissolve injunctions".

- "An action that is filed for specific performance or that is not based on a duly recorded document has no effect…"

- "The fact that there is a consensual lien filed by Plaintiff, which is of record and which it seeks to enforce, is not determinative. Section 48.23 requires that the action be founded on the recorded instrument. "Founded on" means based upon, arising from, growing out of, or resting upon. Kent, 431 So.2d at 282 (Cowart, J., specially concurring)

- "A court may control or discharge a notice of lis pendens as it may grant or dissolve injunctions if the initial pleading does not show that the action is founded on a duly recorded instrument or mechanic's lien. See § 48.23(3), Fla. Stat. (1993); Mohican Valley, Inc. v. MacDonald, <u>443 So.2d 479</u> (Fla. 5th DCA 1984)"

Defendant CARMEN TAUFER Pro-Se, pursuant to Florida Statute 48.23, files this Motion To Dissolve / Discharge Lis Pendens and for Attorney Fees and states as follows:

Case # 10-58746-CA-13

190.     The Plaintiff, filed this mortgage foreclosure action on 11/04/2010;

191.     The Plaintiff, was not the original Lender but the Lis Pendens was recorded in the Public Records of Miami-Dade County, Fla, a Lis Pendens, with respect to the real property at issue in the mentioned case on 11/08/2010, after this foreclosure action was commenced.

192.     Such instrument identifies the Mortgagee as JP MORGAN CHASE BANK, N.A.. This entity is NOT the Entity that filed this foreclosure action and is NOT the entity that recorded the lis pendens that is the subject of this motion;

193.     Therefore, the Lis Pendens does not have the name of the Real Party, does not have the description of the Mortgage Instrument being foreclosed on and does not have the time of the institution of this action.

194.     The name listed on the Lis Pendens is not the name of the Real Party In Interest.

195.     The description of the Mortgage normally include the date the Mortgage was executed, the date it was recorded and the Official Records Book number and the Page(s) Number.  The description of the Mortgage being foreclosed on is not listed;

196.     In this particular case, there are a few duly recorded mortgages against the Defendant's property at the time the lis pendens was recorded

197.     The Lis Pendens recorded by the Plaintiff in this foreclosure action DOES NOT make reference to any Mortgage in particular duly recorded in the Public Records of Miami-Dade County, Florida. It is not against any dully recorded Mortgage.

198.     The name of the Real Party Plaintiff is not listed, the time of the institution of this action is missing, there is no Official Records Book Number and there is no Page number(s) of the Mortgage being foreclosed on, written in this Notice of Lis Pendens. The only reference made by is that the Plaintiff instituted an action seeking to foreclose a mortgage on the following property……

199.     Florida Statutes 48.23(e) states as follows:

> **lis pendens.—(3)** When the initial pleading does not show that the action is founded on a duly recorded instrument or on a lien claimed under part I of Chapter 713 the court may control and discharge the notice of lis pendens as the court may grant and dissolve injunctions.

Case # 10-58746-CA-13

200.     Consistent with the statutory requirements of section 48.23, this Court held in Joge Invs., Inc. v. Millennium Capital, 724 So. 2d 728, 729 (Fla. 3d DCA 1999), that a valid lis pendens must contain the time of institution of the action.

201.     If a plaintiff fails to include all of the required items in the lis pendens, the lis pendens is ineffective. See DeGuzman v. Balsini, 930 So. 2d 752, 755 (Fla. 5th DCA 2006) (holding that the notice of lis pendens failed to comply with section 48.23 because it did not state the time that an action was instituted, and it did not provide a statement of the relief sought as to the property).

202.     Section 48.23(1)(a) requires that a notice of lis pendens contain "the names of the parties, the time of institution of the action, the name of the court in which it is pending, a description of the property involved or to be affected, and a statement of the relief sought as to the property." In Joge Investments, Inc., the Third District reversed the denial of a motion to discharge a lis pendens holding that the notice of lis pendens was facially defective. Id. at 729. In addition to finding that the notice of lis pendens failed to contain the time of institution of the action, the court concluded that the notice did not contain a proper statement of the relief sought. The statement of the relief sought in the notice referred to specific performance of the contract attached as exhibit A of the complaint; however, exhibit A of the complaint was merely a description of the property. Id.

203.     This is exactly the kind of relief sought in this foreclosure action.  It was merely a description of the Defendant's property.

204.     A lis pendens places a cloud on the title that did not previously exist, if not based on a recorded instrument. Mohican Valley, Inc. v. MacDonald, 443 So. 2d 479 (Fla. 5th DCA 1984), approved in part, Medical Facilities Dev., Inc. v. Little Arch Creek Properties, 675 So. 2d 915 (Fla. 1996) and this affects the Defendant's rights.

205.     <u>In summary: An action that is filed for specific performance or that is not based on a duly recorded document has no effect…</u>

206.     Since the Plaintiff's pending pleading does not show that the action is founded on a duly recorded instrument (mortgage), the Lis Pendens is null and void and all actions taken thereafter are also null and void.

Case # 10-58746-CA-13

207.     Further, the Defendant CARMEN TAUFER is entitled to recover attorneys' fees for the preparation and filing of this Motion and for the time spent arguing same at any hearing. S & T Builders v. Globe Props. 944 So. 2d 302 (Fla. 2006).

208.     An order on a motion to dissolve a lis pendens is treated as a final order. Loid v. I&E Group, Inc., 927 So. 2d 1016(Fla. 2d DCA 2006)

209.     As such, the initial pleading by WELLS FARGO BANK, N..A., NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST, SERIES 2010-3, is not founded on a duly recorded instrument, the name of the Real Party Plaintiff is not listed, the date of the initiation of this action is missing and the Court should discharge/dissolve the subject lis pendens filed by the Plaintiff.


WHEREFORE, the Defendant CARMEN TAUFER, respectfully requests this Honorable Court Grant her Motion To Discharge/Dissolve the subject lis Pendens, award reasonable attorneys' fees and costs, and award any other relief this Court believes to be fair, just and equitable under Florida Law.


## TENTH ARGUMENT

### "THE FILING AND SUBMISSION OF PLAINTIFFS COMPLAINT WITH MULTIPLE LIES AND MISLEADING INFORMATION IS GROUND FOR DISMISSAL WITH PREJUDICE"

210.     The filing and submission of Plaintiff's Complaint with multiple lies and misleading information or fraudulent documentation as stated in the Press Release of the Original Plaintiff's Counsel, is ground for dismissal with prejudice. Trial courts have "the right and obligation to deter fraudulent claims from proceeding in court." *Savino v. Fla. Drive In Theatre Mgmt., Inc*., 697 So. 2d 1011, 1012 (Fla. 4th DCA 1997). Florida courts have stated:

> "A trial judge has the inherent authority to dismiss actions based on fraud and collusion." *Young v. Curgil,* 358 So. 2d 58, 59 (Fla. 3d DCA 1978). However, this power of dismissal should be used "cautiously and sparingly," and "only upon the most blatant showing of fraud, pretense, collusion, or other similar wrongdoing." *Id.* (citations omitted); *Morgan v. Campbell,* 816 So.2d 251, 253 (Fla. 2d DCA 2002).

Case # 10-58746-CA-13

> The party alleging fraudulent behavior must prove such by clear and convincing evidence. *Century Props., Inc. v. Machtinger,* 448 So. 2d 570, 573 (Fla. 2d DCA 1984) (citation omitted).
>
> Fraud occurs when it can be demonstrated, "clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." *Cox v. Burke,* 706 So. 2d 43, 46 (Fla. 5th DCA 1998) (quoting *Aoude v. Mobil Oil Corp.,* 892 F. 2d 1115, 1118 (1st Cir.1989)).
>
> When a party lies about matters bearing directly on the issue of damages, dismissal is an appropriate sanction. *Desimone v. Old Dominion Ins. Co.,* 740 So. 2d 1233, 1234 (Fla. 4th DCA 1999). *Distefano v. State Farm Mutual Automobile Ins. Co.*, 846 So. 2d 572, 574 (Fla. 1st DCA 2003). CARVAJAL submits that all of the applicable standards for dismissing a case for fraud have been met in this case.

211.     The PLAINTIFF and the PLAINTIFF'S law firm and/or subcontractors have undoubtedly set in motion this process of trying to influence the finder of fact.

212.     The fraudulent information filed by the Plaintiff in this case meets all the relevant tests that Florida courts have applied to determine if dismissal with prejudice is an appropriate remedy.

213.     **A dismissal with prejudice** is a proper action in this foreclosure action;

WHEREFORE, because the Plaintiff has submitted fraudulent affidavits to the court, this instant case must be dismissed with prejudice as mandated by the Florida Supreme Court.

## ELEVENTH ARGUMENT

### "THE FLORIDA SUPREME COURT HAS DIRECTED TRIAL COURTS TO SANCTION FRAUDULENT BEHAVIOR"

214.     The Florida Supreme Court emphasized that verification is "particularly important" as a result of "recent reports of alleged document fraud and forgery in mortgage foreclosure cases." Much of the national attention to which the Court is referring arose from "robo-signer" depositions taken in Palm Beach County cases.

Case # 10-58746-CA-13

215.    This case has revealed that cases filed in this County are now being "robo-verified" by the PLAINTIFF/BANK, specifically to evade the Supreme Court's goal of enforcing sorely lacking due diligence standards on foreclosure complaints;

216.    Clearly, the Florida Supreme Court wanted this practice of filing slipshod complaints to end and wanted the trial courts to sanction behavior that was not in compliance with the already existing standards of good faith pleading. The attempt to circumvent these standards by disregarding the spirit of the new rule—by shepherding the same slipshod complaints through the process with a mere charade of verification—should be met with the punitive response that was intended by the Supreme Court;

217.    The Florida Supreme Court directed the courts of this state to sanction a lack of due diligence in the preparation of complaints. This is the case to carry out that directive. In this foreclosure action, the Plaintiff, their attorneys and/or subcontractors have submitted to the court fraudulent information with the intent of obtaining a summary judgment of foreclosure, an order of sale and benefit from the proceeds of the sale of the property;

218.    Defendant has provided to this court enough evidence of fraud committed by the Plaintiff and/or their attorneys proving beyond any reasonable doubt that documents submitted by plaintiff on this foreclosure action are misleading and the Court should dismiss this action with prejudice; This kind of behavior should not be allowed by any Court and the Court should penalize the Plaintiff for lying to the Court and filing misleading information.


WHEREFORE, because the Plaintiff has submitted to the Court lied to the Court multiple times, has submitted Misleading information within the four corners of the record, the Defendants respectfully request that this Court dismisses the instant litigation with prejudice, and any other relief the Court deems just and proper.

Case # 10-58746-CA-13

## TWELVETH ARGUMENT

### "FAILURE TO POST COST BOND, FLORIDA STATUTE 57.011"

**Failure to Post Cost Bond [F.S. 57.011]**

219.     WELLS FARGO BANK, N..A., NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC REMIC TRUST, SERIES 2010-3, is a foreign entity.  It has never registered as a Corporation or as a Trust in the State of Florida.

220.     Plaintiff has failed to comply with Florida Statutes section 57.011 and has not posted a cost bond. "When a nonresident plaintiff begins an action [] he or she shall file a bond with surety to be approved by the clerk of $100, conditioned to pay all costs which may be adjudged against him or her in said action in the court in which the action is brought.

221.      On failure to file such bond within 30 days after such commencement or such removal, the defendant may, after 20 days' notice to plaintiff (during which the plaintiff may file such bond), move to dismiss the action or may hold the attorney bringing or prosecuting the action liable for said costs and if they are adjudged against plaintiff, an execution shall issue against said attorney." 57.011 Fla. Stat.

222.     More than 30 days have gone by since this foreclosure action was commenced on 11/04/2010 and the Plaintiff has not posted the Cost Bond.

223.     Therefore, this foreclosure action should be dismissed.

## THIRTEENTH ARGUMENT

### "VIOLATION OF 15 U.S.C. § 1692 ET. SEQ."

224.     Defendants are consumers within the meaning of the FDCPA, 15 U.S.C. §1692a (3). Plaintiff and its agents and attorneys are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a(6).

225.     The plaintiff, its agents and attorneys violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person, and which did harass, oppress and abuse the defendants by falsely representing the character, amount, or legal status of the debt (15 U.S.C. §1692e(2)); by sale or transfer of an interest

Case # 10-58746-CA-13

in the debt that caused the consumer to lose any claim or defense to payment of the debt, and in particular, by obfuscation of the true creditor (15 U.S.C. §1692e(6)); by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed (15 U.S.C. §1692e(8)); by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (15 U.S.C. §1692e(10)); by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law (15 U.S.C. §1692f(1)); by taking or threatening to unlawfully repossess or disable the consumer's property (15 U.S.C. §1692f(6)); by, within five days after the initial communication with counter-plaintiff in connection with the collection of any debt, failing to send counter-plaintiff a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of suchverification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor (15 U.S.C. §1692g).

226.     Plaintiff violated provisions of the Federal Fair Debt Collection Practices Act at15 USC 1692, et. seq. because it did not have any right to enforce collection of this Mortgage and Note because it did not have standing, it did not comply with all conditions precedent, it has no legally enforceable claim against the Defendant, it did not comply with the contract requirements for acceleration, it had unclean hands, it harmed the credit of defendants and it sent dunning letters to the defendants.

Case # 10-58746-CA-13

## FOURTEENTH ARGUMENT

## "VIOLATION OF FEDERAL TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641"

227.      **15 U.S.C. §1641(g) requires:**

**(1) In general**

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

228.      Plaintiff, its agents and attorneys failed to provide defendants with notice of an assignment of the mortgage loan in violation of 15 U.S.C. §1641(g).

## FIFTEENTH ARGUMENT

## "ABUSE OF PROCESS"

229.      Plaintiff, its agents and attorneys made an illegal, improper, or perverted use of process and had an ulterior motive or purpose in exercising the illegal, improper or perverted process. Plaintiff, its agents and attorneys had no legal justification to bring an action to try to foreclose upon defendants property and defendants were injured as a result of the actions of plaintiff, its agents and attorneys.

Case # 10-58746-CA-13

## SIXTEENTH ARGUMENT

### "UNCLEANED HANDS"

230.  Plaintiff did not have the right to file this foreclosure action and does not have the right to benefit from the proceeds from the sale of this property because it does not own or Hold the note and mortgage, nor did it have authority to enforce the note;

231.  The Plaintiff comes to Court with unclean hands and is prohibited by reason thereof from obtaining the equitable relief of foreclosure from this Court as set forth in the defendant's statement of facts contained herein above and incorporated herein;

   a.  **"He Who Seeks Equity Must Do Equity": A Recent Florida Appellate Case**

   "He who seeks equity must do equity. *Williamson v. Williamson*, 367 So. 2d 1016 (Fla. 1979); *Diaz v. Diaz*, 418 So. 2d 1064 (Fla. 3rd DCA 1982). Equity delights to do justice and not by halves. *Skillman v. Baker*, 142 So. 2d 113, 114 (Fla. 1st DCA 1962)." *Demorizi v. Demorizi*, CASE NO. 3D02-2063 , COURT OF APPEAL OF FLORIDA, THIRD DISTRICT, 851 So. 2d 243; 2003 Fla. App. LEXIS 11419; 28 Fla. L. Weekly D 1747, July 30, 2003, Opinion Filed , Released for Publication August 15, 2003. Appeal dismissed by Demorizi v. Demorizi, 851 So. 2d 168, 2003 Fla. App. LEXIS 12290 (Fla. Dist. Ct. App. 3d Dist., 2003).

The importance of this maxim ought to be obvious. But for those who fail to fully appreciate it, the following possible applications are suggested:

- Where a plaintiff engages in misconduct and extrinsic fraud in the service of the complaint to keep the defendant from the court

- Where a plaintiff falsely alleges that the plaintiff is the owner and/or holder, when this is not in fact the case

- **Where a plaintiff fabricates evidence in support of its complaint**

- Where a plaintiff suborns the perjury of a contracted professional perjurer in support of its complaint

- Where a plaintiff charges or assesses illegal, unjust and/or improper fees and predicates its complaint of foreclosure on such charges and/or assessments

232.     It should be noted that each of the above might be a basis for the application of the clean hands doctrine as well as the maxim "He who seeks equity must do equity".

233.     Note that there is a DIFFERENCE. "Clean hands" would seem to implicate scienter: guilty knowledge; knowing the impropriety/illegality associated with doing certain acts.

234.     "He who seeks equity must do equity" might NOT require scienter.

For example, suppose that the mortgage servicer ERRONEOUSLY applied late payments or fees, which precipitate a technical default. It might be a stretch to assert that this reflects unclean hands on the part of the servicer. But failure to rectify the error or persisting in an assertion of default would rather clearly seem to be *unjust* or *inequitable*.

## SEVENTEENTH ARGUMENT

### FAILURE TO COMPLY WITH FEDERAL
### PRE-SUIT DEFAULT PREVENTION PROCEDURES

### *i.     Law*

235.     The Florida Consumer Practices Act (FCCPA, F.S. 559.552) provides protection for consumers in foreclosure. The FCCPA prohibits the Plaintiff from collecting the underlying consumer mortgage debt involved in this action by asserting its right to foreclose when the Plaintiff knows that such right does not exist because the Plaintiff did not comply with the applicable federal default servicing obligations and guidelines prior to filing this foreclosure action.

> **F.S. 559.72(9) provides (in pertinent part):**
> Prohibited practices generally. In collecting consumer debts, no person shall:
>
> (9) Claim, attempt, or threaten to enforce a debt when such person...assert(s) the existence of some other legal right when such person knows that the right does not exist.

236.     The FCCPA applies to anyone attempting to collect a consumer debt unlawfully and F.S. 559.72 "includes all allegedly unlawful attempts at collection consumer claims." Seaton Jackson v. Plaintiff Homemortgage, Inc., 12 Fla. L. Weekly Supp. 188 (Fla. 6th

Case # 10-58746-CA-13

Circuit 2004) citing Williams v. Streeps Music Co., Inc., 333 So. 2d 65 (Fla. 4th DCA 1976)   See also, Hart v. GMAC Mortgage Corporation, 246 B.R. 709 (D. Mass. 2000)(Debtor stated a cause of action under the FDCPA where continuation of foreclosure proceedings amounted to conduct "the natural consequence of which was to harass, oppress, or abuse").

237.   The National Housing Act, 12 U.S.C. 1710(a) imposes specific statutory obligations on  All creditors across the United States who service federally-insured home loans that requires the creditor to engage in very specialized default loan servicing and loss mitigation to avoid foreclosure when a borrower defaults on a home loan insured by the federal government for reasons beyond their control.  The creditor is fully insured in exchange for agreeing to abide by these customer servicing obligations.

238.   Compliance with the default loan servicing federal regulations promulgated by HUD, pursuant to the National Housing Act, 12 U.S.C. 1710(a) can be held to be a ***contractual condition precedent*** to instituting a foreclosure action and the failure of the Plaintiff to implement foreclosure avoidance servicing is an appropriate subject for a counterclaim for declaratory and injunctive relief.  See: U.S. v. Trimble, 86 F.R.D. 435 (S.D. Fla. 1980) and Cross v. Federal National Mortgagee Association, 359 So. 2d 464, 465 (Fla. 4th DCA 1978):  "A mortgage foreclosure is an equitable action and thus equitable defenses are most appropriate [I]t appears to us that given the purpose of ... the recommended efforts to obviate the necessity of foreclosure, any substantial deviation from the recommended norm might be construed by the trial court under the heading of an equitable defense." Id., 359 So. 2d at 465.  (also see U.S. v. Trimble, 86 F.R.D. 435 (S.D. Fla. 1980), where the court found that compliance with applicable federal laws can be upheld as equitable defense to deny a creditor the judicial remedy of foreclosure).

   *ii.    Argument*

239.   The Plaintiff must show that it has federal authority to foreclose – that it complied with the pre-foreclosure default prevention procedures.  The issue before the court in this action on Defendant's motion is whether the Plaintiff's alleged failure to comply with these federal obligations before instituting this foreclosure action can be grounds for the court to equitably deny the lender the remedy of a foreclosure.

240.   There are certain required steps a servicer of a loan must do before foreclosing,

Case # 10-58746-CA-13

which are set forth in 24 CFR 203.604 and 24 CFR 203.605 for FHA loans, 7 CFR 762.143(b)(5) for Farm Services Loans, and other provisions for other types of federally backed loans.

241.     The federal government has deemed that pre-suit default prevention procedures are a condition precedent to filing a foreclosure action and must be utilized before foreclosure may be instituted.   F.S. 559.72(9) provides that it is illegal to enforce collection when knowing that other legal rights exist.  The face of the mortgage provides prima facie evidence that this is a federally backed mortgage.  The Plaintiff must demonstrate that it complied with all federal regulations on pre-suit default prevention procedures.  That was not done in this case.

242.     It is therefore not sufficient in an action in equity or law to merely allege all conditions precedent have occurred.

243.     The complaint is devoid of any statement that the Plaintiff complied with federal pre-suit default prevention procedures.  The Plaintiff claims that all conditions precedent were satisfied, but it does not make any allegation that it complied with the federal pre-suit default prevention procedures.

## EIGHTEENTH ARGUMENT

### LACK OF ACCELERATION

### *i.     Law*

244.     The Mortgage provides that no suit may be commenced until acceleration notice has been given pursuant to the terms of the Mortgage.  (Complaint, Mortgage, par. 20)

245.     That notice must be at least 30 days prior to the initiation of the suit.  (Reference in par. 20 to par. 22 of the Mortgage which states 30 days notice required)

246.     Additionally, the notice that is required is that sent by first class mail to the defendants.  (Pl. Complaint, Mortgage par. 15)

### *ii.     Argument*

247.     The requirement of notice prior to acceleration is both a condition and a covenant. The Plaintiff admits in its complaint that the Complaint itself is notice of acceleration.

Case # 10-58746-CA-13

That is a material violation of the terms of the Mortgage which provide that no suit may be commenced prior to that notice being given.  Additionally, there is no reference in the Complaint that any document was sent by first class mail to the Defendant.

248.    Based on section 22 of the Mortgage and the definition of "lender" set forth on page I of the Mortgage, <u>Amedas v. Brown</u>, 505 So.2d 1091 (Fla. 2nd DCA 1987), a default notice from the "lender" is a condition precedent prior to filing this complaint, <u>Dykes v Trustbank Savings. F.S,B.</u>, 567 So.2d 958 (Fla. 2nd DCA 1990); <u>Gomez v. American Savings and Loan  Ass`n</u>, 515 So.2d 301 (Fla, 4th DCA 1987): <u>Rashid v. Newberry Federal Savings and Loan Association</u>, 502 So.2d 1316 (Fla. 3rd DCA 1987); <u>Rashid v. Newberry Federal Savings and Loan Association</u>, 526 So.2d 772 (Fla. 3rd DCA 1988).

## NINETEENTH ARGUMENT

### LACK OF COMPLIANCE WITH F.S. 660, et. seq.

### *i.*     *Law*

249.    Plaintiff has not alleged compliance with Florida Statute § 660.27, titled:  **Deposit of securities with Chief Financial Officer** which provides, in pertinent part:

(1) Before transacting any trust business in this state, every trust company and every state or national bank or state or federal association having trust powers shall give satisfactory security by the deposit or pledge of security of the kind or type provided in this section having at all times a market value in an amount equal to 25 percent of the issued and outstanding capital stock of such trust company, bank, or state or federal stock association or, in the case of a federal mutual association, an equivalent amount determined by the office, or the sum of $ 25,000, whichever is greater. However, the value of the security deposited or pledged pursuant to the provisions of this section shall not be required to exceed $ 500,000. Any notes, mortgages, bonds, or other securities, other than shares of stock, eligible for investment by a state bank, state association, or state trust company, or eligible for investment by fiduciaries, shall be accepted as satisfactory security for the purposes of this section.

250.    Plaintiff has also failed to comply with Florida Statute § 660.27(2)(a), which requires the Bank to provide to Florida's Chief Financial Officer the full legal name of the trust, its federal employer identification number; principal place of business; amount of capital stock; and amount of collateral required to be deposited by the trust.

251.    According to the Florida Office of Financial Regulation, Plaintiff has never been registered as a mortgage company in the State of Florida.  The Defendants allege that

Case # 10-58746-CA-13

Plaintiff is subject to the Florida registration and reporting statutes:

**Florida Statute 658.12(20)** defines "trust business" as "the business of acting as a fiduciary when such business is conducted by a bank, state or federal association, or a trust company, and also when conducted by any other business organization as its sole or principal business.

**Florida Statute 658.12(8)** defines "fiduciary" as "a trustee; committee, guardian, custodian, conservator, or other personal representative of a person, property, or an estate; registrar or transfer agent of, or in connection with, evidences of indebtedness of every kind and of stocks and bonds and other securities; fiscal or financial agent; investment adviser; receiver; trustee in bankruptcy; assignee for creditors; or holder of any similar representative position or any other position of trust, including a person acting in any or all the capacities and performing any or all the functions enumerated in F.S. 660.34.

**Florida Statute 660.34(1)** grants Plaintiff and every trust company in compliance with the statute "the right and power to act, alone or jointly with any other person, in any and every fiduciary capacity for or in connection with any and all fiduciary accounts of or pertaining to any business organization or other person, and any government, governmental body or other governmental entity or officer or body politic, and to engage in and conduct a general trust business."

**Florida Statute 660.34(2)** grants Plaintiff and every trust company in compliance with the statute "all the rights, privileges, and immunities, and all the duties and obligations, appertaining to any fiduciary capacity assigned to or assumed by it and to fiduciaries generally."

**Florida Statute 660.34(3)** grants Plaintiff and every trust company in compliance with the statute "the right and the power to effectuate, exercise, carry out, and otherwise implement, in any lawful manner, any and all its lawful duties, obligations, rights, privileges, and immunities in connection with any fiduciary capacity assigned to or assumed by it and in connection with the conduct of its trust business…"

252.    Plaintiff is transacting trust business in the State of Florida which includes, but is not limited to the following:   the acquiring, holding and transferring mortgages on property in Florida; receiving assignments of promissory notes; receiving payments from Florida consumers on mortgage notes; enforcing notes by filing and prosecuting this and other foreclosure actions; foreclosing on mortgages; purchasing foreclosed properties at judicial sales;  and owning and selling properties acquired at judicial sales..

Case # 10-58746-CA-13

### ii.    *Argument*

203.     The Complaint is devoid of any allegation of compliance with F.S. 660.27, and should therefore be dismissed.

### *Market Securitization:*

204.     There has been an industry-wide practice of selling residential real estate mortgage loans to Real Estate Mortgage Investment Conduit (REMIC) trusts. The mortgage loan is typically sold by the Lender to a purchaser on the secondary or tertiary market who would sell/convey the mortgages to the trust, usually in a bundle of Promissory Notes, where a depositor would "purchase" the mortgage loans from the seller, and immediately transfer these mortgage loans to the trustee in exchange for certificates.  The certificates provide terms of payment of principal and interest to the certificate holder.  The depositor then typically sells the certificates to sophisticated investors (as that term is defined by the Securities and Exchange Commission's regulations and relevant statutes) such as pension plans.  The identities of these investors is unknown as it changes as these negotiable instruments are sold and resold in these markets, and as the investors sell and re-sell their certificates/shares in the mortgage-backed securities.  The description of a mortgage loan as being "securitized" or "collateralized" means that the mortgage loan was sold in the secondary or tertiary mortgage market and the Promissory Note was transferred to a REMIC trust where certificate holders are the ultimate beneficiary thereof.   As Defendant MERS publicly asserts, the "investors" are the beneficial owners of the mortgage loan.  (Exhibit 3, footnote 1)

253.     The "secondary mortgage market" consists of the government or one of the government-sponsored entities created by statute to purchase residential mortgage loans from banks and other lenders. See 12 U.S.C. §§ 1451-59, 1716-23 et seq. [creating the Government National Mortgage Association ("Ginnie Mae"), Federal National Mortgage Association ("Fannie Mae"), and Federal Home Loan Mortgage Corporation ("Freddie Mac")].  The "tertiary mortgage market" consists of private entities, other than those made up by the secondary mortgage market, that purchase mortgage loans.

Case # 10-58746-CA-13

254.     There is a statutory purpose to the creation of the secondary mortgage markets, which is to enable the original lender to be able, from the sale of the first mortgage loan, to have additional funds readily accessible to additional home buyers.  (12 U.S.C. §§ 1451, 1716)

255.     In 1993, the Mortgage Bankers Association, Ginnie Mae, Fannie Mae, Freddie Mac and others recognized the need for an electronic registration and tracking system to keep track of the ownership interests in mortgage loans.   Failure to demonstrate ownership would prove fatal to the liquidity of this market.   As a result, they created MERSCORP, Inc.  Defendant MERS is not MERSCORP, Inc.   MERS is the wholly owned subsidiary of MERSCORP, Inc.  The dual structure of the company was designed to prevent creditors of MERSCORP from attempting to seize loans recorded in the Mortgage Electronic Registration Systems, Inc.'s name in the event that MERSCORP, Inc. declares bankruptcy. (Carson Mullen, *MERS: Tracking Loans Electronically*, MORTGAGE BANKING, May 31, 2000, p. 62)  The substantial difference between the two entities is that whereas MERSCORP, Inc. tracks the beneficial ownership of the mortgage loan, MERS claims it is the beneficial owner of the Security Instrument.

256.     When the note is sold by the original lender to others, the sale is tracked on the MERS® System, a private, for profit, database and tax evasion service causing atrophy in the nation's public real property information infrastructure by (i) destroying the transparency in ownership of real property heretofore safeguarded by county recording offices, and (ii) usurping the recording fees that once funded maintenance, innovation and vigilance in public record keeping systems. MERS has member entities who typically are purchasers in the tertiary mortgage market.  If the mortgage loan is sold to a non-member of MERS, an assignment from MERS to the non MERS entity is made, executed and recorded in the county where the real estate is located, and the loan is "de-activated" from the MERS® System.  MERS is actively working to insure that, one day, de-activation from the MERS® System will cease entirely.  The Chief Executive Officer of MERS, R.K. Arnold, has stated publically that it is the mission of MERS "to capture every mortgage loan in the country." (*MERS Registers 20 Million Loans,* INSIDE MERS, Jan/Feb. 2004, at 1.)   MERS' mission is to supplant the public land title recording

systems' lien records with a purely private system and to achieve this end in the absence of legislation or meaningful judicial precedent. On information and belief, Plaintiff's mortgage loan was "securitized" or "collateralized" on the secondary market.

257.     The MERS recording and foreclosure system has been a contributing cause of the American mortgage foreclosure crisis, as is most eloquently and succinctly explained by Christopher L. Peterson, the Associate Dean of Academic Affairs and Professor of Law at the University of Utah, S.J. Quinney College of Law, in his legal abstract entitled FORECLOSURE, SUBPRIME MORTGAGE LENDING, AND THE MORTGAGE ELECTRONIC REGISTRATION SYSTEM. (electronic copy available at : http://ssrn.com/abstract=1469749) MERS facilitates predatory structured finance by decreasing the exit costs of loan originators.  During the years 2000-2007, as investment banks, hedge funds, institutional investors, and the credit rating agencies weighed the risks of dumping billions of dollars into mortgage securities drawn out of the balance sheets of thinly capitalized, bankruptcy prone mortgage lenders, MERS provided an inducement to take that risk. When thinly capitalized loan originators churned out more and more securitized loans, the claims against those lenders accumulated while their assets did not.  Once the projected costs of (i) the recourse demands by the disgruntled investors and (ii) the borrower predatory lending lawsuits, had exceeded the projected costs of bankruptcy and reformation under a new corporate guise, management of the loan originators would predictably opt to discard their corporate identity.  (Christopher L.Peterson, *Predatory Structured Finance,* 28 CARDOZO L. REV. (2007) at 2275) MERS made this easier by offering a *super-generic placeholder* that transcended the aborted life of the loan originators. MERS reassured investors that even when an originator goes bankrupt, county property records would remain unaffected and foreclosure could proceed apace. By serving as the true mortgagee's proxy in recording and foreclosure, MERS abetted a pump-and-dump, no accountability model of structured mortgage finance.  Moreover, the use of MERS' corporate identity has facilitated the separation of foreclosure actions and litigation of predatory lending and servicing claims. When MERS (or, more accurately, servicers or foreclosure specialists acting in MERS' name) brings foreclosure actions, it justifies this entitlement based on a fraudulent claim of legal ownership of mortgage liens. But, when borrowers attempt to assert counter-

Case # 10-58746-CA-13

claims challenging the legality of mortgage brokers, lenders, trusts, or servicers, MERS hides behind its claims of "nominee" status.  MERS represents the mortgage finance industry's best effort to create a single, national foreclosure plaintiff that always has foreclosure standing, but never has foreclosure accountability.

## MOTION TO STRIKE REQUEST FOR ATTORNEY FEES

258.	The Plaintiff's Attorney is charging $4,675.00.  This is an illegal charge to the Defendant.

259.	The mortgage will be construed against the party that drafted it.  Heath v. First Nat'l Bank, 213 So. 2d 883 (Fla. 1    DCA 1968)   In the Complaint, Plaintiff requests an award of reasonable attorney fees.  (Complaint, Prayer)

260.	Paragraph 24 of the mortgage attached as an exhibit to the complaint states:

**Attorneys' fees**. As used in this Security Instrument and the Note, "attorneys' Fees" shall include any attorneys' fees awarded by an appellate court.

261.	This is an action in the Circuit Court of the State of Florida. The mortgage does not provide for attorney fees in any court other than an appellate court, though it could have as easily indicated that attorney fees are awardable in Circuit court or in any court for that matter.  The document was not drafted by the Defendant and if it is ambiguous, it should be construed against the maker, not the Defendant.

## MOTION TO STRIKE REQUEST FOR DEFICIENCY JUDGMENT

262.	In Plaintiff's prayer for relief Plaintiff appears to be seeking a deficiency judgment. The record does not verify that Plaintiff has suffered any damages. Claim of damages, to be admissible as evidence, must incorporate records such as a general ledger and accounting of an alleged unpaid promissory note and the person responsible for preparing and maintaining the account general ledger must provide a complete accounting which must be sworn to and dated by the person who maintained the ledger. Plaintiff has failed to provide any accounting to Defendants.

And last, Plaintiff has offered no allegations or evidence that it is a holder in due course and that it is entitled to any deficiency judgment.

Case # 10-58746-CA-13

WHEREFORE, defendant CARMEN TAUFER pursuant to Florida Rules of Civil Procedure, Rule 1.540(b), moves this Court for an Order Vacating the Final Judgment of Foreclosure entered by this Court in favor of the alleged Plaintiff on 03/19/2014, in the stated action, Vacate the Sale of Defendant's Property of 09/18/2014, Vacate the Certificate of Sale issued on 09/23/2014, Cancel Lis Pendens and Dismisses this Foreclosure Action with prejudice because the Plaintiff filed fraudulent or questionable documentation, did not serve Defendant properly according to the law, filed a Defective Lis Pendens, recorded two fraudulent Assignments of Mortgage prepared, signed and notarized by known robo-signers, for Lack of Verification (lack of attachment of Power of Attorney for signing the Verified Complaint as Attorney In Fact), for Lack of Reasonable Indemnification, for Lack of Federal Pre-Foreclosure Default Prevention Procedures; for Lack of Acceleration, Paragraph 22; Lack of Compliance with F.S. 660, Trust Registration; Lack of Loss Reserve Application; Lack of Debt Validation and other misrepresentations

The Defendants reserve the right to amend this Motion, to add more reasons to support their Motion as evidence is being discovered and more evidence of the Plaintiff's wrong doing will be discovered.

Respectfully Submitted on this 29th of September, 2014, by

/s/ Alfonso E. Oviedo
Florida Bar # 0478172
8370 West Flagler Street, Suite 110
Miami, Fl 33144
Cell: 305-613-6409 / Email: Oviedo13@gmail.com

### CERTIFICATE OF SERVICE

I, HEREBY CERTIFY that a true and correct copy of the foregoing was served by email, mail and/or via fax, this 19th day of September, 2014, to the Plaintiff's Attorney:  The Law Office of **GARY I. GASSEL, ESQUIRE** 2191 Ringling Boulevard, Sarasota, Fl 34237
Email: pleadings@gassellaw.com / Efiling@gassellaw.com.

By: /s/ Alfonso Oviedo / Alfonso Oviedo